[Crim. No. 873. Second Appellate District, Division Two.—May 29, 1922.]

THE PEOPLE, Respondent, v. B. D. WHITESIDE, Appellant.

[1] CRIMINAL LAW—OBTAINING OF MONEY BY FALSE PRETENSES—RECEIPT OF MONEY—SUFFICIENCY OF INFORMATION.—An allegation in an information charging the obtaining of money by false pretenses that the complaining witness was induced to pay over and

Reliance on false pretenses as an element of the offense, note, 6 L. R. A. (N. S.) 365.

Evidence of other crimes in prosecution for false pretenses, notes, 10 Ann. Cas. 906; 17 Ann. Cas. 464; 62 L. R. A. 222, 240, 323; 43 L. R. A. (N. S.) 667.

deliver to the defendant a given sum was sufficient to convey the meaning that the defendant received the money, and where the evidence showed that he did receive it, his case was not prejudiced by the absence of a direct averment to such effect in the pleading.

[2] ID.—EVIDENCE—SIMILAR REPRESENTATIONS.—Evidence of similar false representations made by a defendant to the same person for the purpose of obtaining property, or to others shortly before or after the representations for which the defendant is on trial, is admissible to prove either defendant's knowledge of their falsity or a criminal intent, or both.

[3] ID.—CASHING OF CHECK OF COMPLAINING WITNESS—DEBITING OF BANK ACCOUNT.—Where in a prosecution for obtaining money by false pretenses the complaining witness testified without objection that his bank account was debited with the check which he had given to the defendant, and such testimony was not contradicted, the defendant cannot contend that such testimony was hearsay and should have been disregarded by the jury, since the jury had the right to conclude therefrom that the defendant received the money by the cashing of the check.

[4] ID.—RELIANCE UPON REPRESENTATIONS—SUFFICIENCY OF EVIDENCE. In this prosecution for obtaining money by false pretenses, the evidence warranted the jury in concluding that the complaining witness believed the representations made by the defendant and was thereby induced to deliver to him the check which was later cashed.

[5] ID.—PROOF OF OFFENSE—WHEN COMPLETE.—Proof of the offense of obtaining money by false pretenses is complete when it is shown that the prosecuting witness is induced to part with his money in reliance upon the fraudulent pretenses of the accused.

[6] ID. — CORROBORATION OF COMPLAINING WITNESS — SIMILAR STATEMENTS TO OTHERS.—The corroboration required by section 1110 of the Penal Code may consist of statements made to others similar in character to the fraudulent ones relied upon by the prosecuting witness.

APPEAL from a judgment of the Superior court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

Muhleman & Crump and Ford & Bodkin for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Lorrin Andrews for Respondent.

CRAIG, J.—The defendant was convicted on three counts of an information, each of which charged obtaining money by false pretenses. He was the president and manager of the Montebello Oil Company No. 1. Soon after he became acquainted with John R. Crowley and his wife, defendant told them that he had three oil wells at Montebello; that his first well was giving 5,000 barrels a day and that he had two other wells about to come in; that the Union and Standard Oil Companies were piping the first well off for him; that all there was for him to do was to check it up every week or month; that his oil was of the finest grade in all California. On June 10th, the Crowleys sold a lease and furniture of an apartment house, which they owned, to the defendant. On June 20th defendant requested the Crowleys to come to his office. This was on a Sunday. He told them that he appreciated the sale of the lease to him and that he wanted to do something nice for them; that a friend in the east had sent him 3,000 shares of stock in an oil company; that the well had run one week giving 3,000 barrels a day; that he had capped it; that his friend did not know that the oil well was flowing; that, if the Crowleys wanted the stock the defendant would let them have it at cost; that the defendant could go out on the street and obtain $6,000 for it, but that he wanted to do them a favor. Crowley stated that he had no money except what he had received for the lease and that he wanted to keep that to buy an apartment house. Defendant said that he would let them have an apartment house after July 10th and that while they were waiting they could make $10,000 by buying the oil stock. Crowley said that he knew nothing about oil stock, to which the defendant replied that he was sixty-two years old and had never wronged anyone; that he and his wife were living only to help others; that he had all the wealth he needed. Crowley gave the defendant his check for $3,000 on the Security Trust and Savings Bank of Los Angeles and received a certificate of stock from the defendant. Later, on the 9th of July, Whiteside asked Crowley to turn over the stock to him, saying that he could sell it for a lot of money. On the following day defendant called at Crowley's house and was given the stock. At this time he gave Crowley $200 in cash and a note for $2,800, stating that the note was security for the stock and that he could get lots more money for it by sending the stock back

to Iowa, but that it would take six or seven days before his agent in Iowa could return the stock or the money. Crowley never received his money, nor the return of his stock, although he later demanded an accounting of Whiteside, but was told that he, Crowley, had no interest in the company and would have to go to court to get his money. The principal facts testified to by witnesses for the people were disputed by the defendant. There was substantial evidence to show that the defendant's representations to the effect that Montebello oil well No. 1 had flowed 5,000 barrels was false; that neither the Union nor Standard Oil Companies ever piped any of the oil from defendant's wells or made any arrangement to do so; that such oil as flowed from defendant's well No. 1 was intermingled with water and mud and was not the finest oil in California, but, on the contrary, was of a low gravity.

Concerning the charge set forth in the second and third counts of the information, it appears that defendant stated to Godfrey and Berkeley that oil well No. 1 was a gusher; that, if he should remove the steel cap from the well the whole valley in which the well was situated would be flooded with oil; that the well had a 3,000 barrel capacity per day when first brought in and would settle down into at least 2,000 barrels; that the oil was of high gravity and had been contracted for and sold to the Standard and Union Oil Companies and that the Standard Oil Company was to pipe the oil off. Godfrey testified that, basing his action upon these representations he gave the defendant a check for $600 on the Guaranty Trust & Savings Bank of Los Angeles, which was subsequently indorsed by defendant, paid and debited to Godfrey's account. Berkeley heard the same statements and gave a check for the sum of $400 on the Los Angeles Trust & Savings Bank, which he testified was indorsed by Whiteside and also paid and debited against Berkeley's account. Both received stock in Montebello Oil Company No. 1 for their checks. In addition to the falsity of the representations already mentioned, it appears that the well referred to never did more than run over the surface two or three inches with water, oil and mud. The defendant controverted the material parts of the testimony given against him and especially that he had made the representations of fact concerning the transaction with Crow-

ley. He testified that he did not sell his stock, but had merely borrowed $3,000 from Crowley which he had offered to repay, but that Crowley did not want the money.

[1] It is claimed that appellant's objection to the introduction of evidence in support of the first and third counts should have been sustained. The objection was based on the ground that these counts failed to state facts sufficient to constitute a public offense. The part of the first count of the information which is under criticism in this regard reads as follows: "that the said John R. Crowley . . . was induced . . . to pay over and deliver to the said B. D. Whiteside $3,000 in money." There is no direct allegation in this count that John R. Crowley actually paid over and delivered $3,000 or anything else to B. D. Whiteside or that Whiteside obtained anything from Crowley. It is obvious that regardless of the false pretenses which the defendant may have made which were persuasive enough to have amounted to an inducement to Crowley to pay over and deliver money, no crime was committed unless Crowley in fact paid the money over and delivered it to the defendant.

In each of the cases cited by the people to sustain the pleading in question there is a positive allegation that property was obtained by the defendant. In *People* v. *Griesheimer*, 176 Cal. 48 [167 Pac. 522], the language used was "did then and there deliver." In *People* v. *Flowers*, 54 Cal. App. 214 [201 Pac. 468], it was, "that was paid to appellant the sum of $130." In *People* v. *Haas*, 28 Cal. App. 182 [151 Pac. 672], it was "did sell and dispose of." A good pleader would not fail to make a direct allegation in charging an offense of this nature that property was in fact obtained by the defendant. However, in *State* v. *Brown*, 143 Wis. 405 [127 N. W. 956], an indictment containing similar language was held sufficient against an attack upon the same ground as in the case at bar. In that case the language was, "did . . . induce said Marinette to buy." It was there held that these words would, in their ordinary acceptation, be held to mean that the defendant obtained the money. The same may be said of the words used in the instant case. They convey the meaning that Whiteside received the money charged to have been obtained by false pretenses. The evidence shows clearly that he did receive it and that his case was not prejudiced by the lack of direct-

ness in the pleading. Therefore, we conclude that as to this ground the judgment must be sustained. What we have said as to the first count applies also to count No. 3 in so far as the objection to the introduction of evidence is concerned.

[2] The witness Stivers, the editor of a newspaper published in Montebello, was permitted to testify that in August of 1920, two months after the transactions charged in the various counts of the indictment had taken place, the defendant came to the office of the paper and said that ''he had a perfectly dry hole producing pure oil.'' That he gave the gravity as thirty or thirty-two gravity and said that the well would run around 2,000 barrels a day. It is claimed that the trial court erred in admitting this evidence over the objection of the defendant because of the remoteness in point of time of the conversation from the acts for the commission of which the defendant was convicted. While the cases in other jurisdictions are not uniform, the better rule would seem to be that the admission of evidence of similar representations is not to be determined so much by the time they were made as by their relevancy and tendency to show criminal intent and guilty knowledge in the making of the pretenses upon which the prosecution is predicated. (*People* v. *Whalen*, 154 Cal. 472 [98 Pac. 194]; *People* v. *Emmons*, 13 Cal. App. 497 [110 Pac. 151].) In these and other California cases, where proof of similar offenses has been upheld, the element of time has been given no particular consideration. Of course, proof may be made also of other false representations than those made in connection with the crime under investigation where they tend to establish a plan and scheme to defraud thus also involving proof of guilty knowledge and criminal intent. The general rule is stated in 16 Corpus Juris, section 1162, as follows: ''Evidence of similar false representations made by defendant to the same person for the purpose of obtaining property, or to others shortly before or after the representations for which defendant is on trial, is admissible to prove either defendant's knowledge of their falsity or a criminal intent, or both.''

In the instant case the statements testified to by Stivers might fairly be regarded as additional evidence of a general scheme to defraud anyone who might be directly or indi-

rectly induced to buy stock. It might also be reasonably inferred that, if defendant made these statements to Stivers which were shown to be false and at a time when he must have been aware of their falsity, the statements made to Crowley, Godfrey and Berkeley were also made with knowledge of their falsity and with an intent to defraud. Such an inference might fairly have been drawn by the jury. Therefore, proof of the statement made to Stivers was relevant to issues necessarily involved in the decision of each of the charges contained in the information in the instant case. If viewed with respect to its relevancy as tending to show that the facts constituting the charge contained in the information were a part of a scheme to defraud the public as distinguished from a single individual, it was not necessary in order that Stivers' testimony be admissible that an attempt be shown to have been made to sell him any stock or that the evidence, if accepted as true, should tend to show the commission of an offense like in character to the one charged. (*State* v. *Briggs,* 74 Kan. 377 [10 Ann. Cas. 904, 7 L. R. A. (N. S.) 281, 86 Pac. 447].)

[3] Appellant's third contention is clearly untenable. Crowley testified that he had an account at the Security Trust and Savings Bank; that the account was debited with the check for $3,000 which he had given Whiteside. The check was produced and showed that it was indorsed "B. D. Whiteside" and was marked on the back as paid. From this it might be presumed that the check had been paid from the bank account of Crowley. Such a result would be expected from the ordinary course of business. (Sec. 1963, Code Civ. Proc., subd. 20.) Crowley's testimony that his account was debited with the check was given without objection. Appellant now insists that this was hearsay and should have been disregarded by the jury and must be excluded by this court in reviewing the matter on appeal. If the evidence in this regard was hearsay, counsel for the defendant had every opportunity to bring the fact out on cross-examination. Crowley's testimony that his account was debited with the check is uncontradicted and unimpeached and, therefore, the jury had the right to conclude that Whiteside received the money as alleged in the information and that he secured it by cashing the check given him by Crowley. (*People* v. *Whalen,* 154 Cal. 473 [98 Pac. 194].) The testi-

mony of Godfrey and Berkeley in support of this phase of
the charges, as set forth in the second and third counts, is
substantially the same as that of Crowley.

[4] Appellant insists that there is absolutely no testi-
mony that Crowley was induced to part with his property
by reason of any pretenses set forth in count No. 1 of the
information. It it true that this prosecuting witness did
not testify directly that he relied upon any particular rep-
resentation which the said Whiteside made to him, nor did
he name any such statement of Whiteside as the inducement
which impelled him to part with his money. But he did
testify that Whiteside had said, concerning the well of
Montebello Oil Company No. 1, that he had had it running
for one week and that it flowed 3,000 barrels of oil a day
and that he had capped it. The witness also recited that
"we," meaning Mrs. Crowley and himself, told the defend-
ant that they had never owned any oil stock and that this
was practically all the money they had and they did not
want anything that was not perfectly good; that defendant
said he could get $6,000 for the stock on the street, but
wanted to do something nice for the Crowleys. As claimed
by appellant, there was also talk about the resale of the stock
and the purchase of an apartment house by the Crowleys
from the defendant, he having given them an assurance that
they could make $10,000 by buying the stock while waiting
for the apartment house and that he would sell it to them
even though they did not have a cent to pay on it. Al-
though the evidence must show beyond a reasonable doubt
that the prosecuting witness believed the representations were
true and relied upon them, such representations need not be
shown to have been the sole cause of his parting with his
money. This, and the question as to what representation or
consideration influenced his action, is one for the jury.
(Underhill on Criminal Evidence, 2d ed., sec. 442.) In the
instant case, the evidence warranted the jury in concluding
that the complaining witness believed the representations
made by Whiteside and was thereby induced to deliver to
him the check, which was later cashed.

[5] Appellant's contention, that because Godfrey and
Berkeley resold their stock they were not injured and that,
therefore, the offense charged was not shown to have been
committed, is squarely met by *People* v. *Bryant,* 119 Cal.

595 [51 Pac. 960]. In that decision the principle is clearly stated that the proof of the offense is complete when it is shown that the prosecuting witness is induced to part with his money or property in reliance upon the fraudulent pretenses of the accused.

[6] Appellant next contends that the testimony of Godfrey is not sustained because it was not corroborated as required by section 1110 of the Penal Code. This corroboration may consist, as it did in the instant case, of statements made to others similar in character to the fraudulent ones relied upon by the prosecuting witness. (*People* v. *Wymer*, 53 Cal. App. 204 [199 Pac. 815].) The witnesses, Crowley, Mrs. Crowley, Stivers, and Manners all testified to such corroborative statements which we think are sufficient to comply with the requirements of section 1110 of the Penal Code.

No error of a prejudicial character appearing to have been committed in the trial of the case, the judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 27, 1922.

All the Justices concurred.

Richards, J., *pro tem.*, and Myers, J.; *pro tem.*, were acting.