[Crim. No. 1626. First Appellate District, Division One.—July 28, 1931.]

THE PEOPLE, Respondent, v. PORTER MUNSON, Appellant.

Alfred J. Hennessy for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Respondent.

TYLER, P. J.—Defendant was accused under two separate indictments of grand theft. The two indictments were consolidated. Trial was had and he was found guilty as charged in both indictments. Motion for a new trial was made and denied and this is an appeal from the order and judgment. The main point urged for a reversal is that the verdict is contrary to law and the evidence.

The first indictment charged that defendant did feloniously steal, take and carry away certain shares of stock, belonging to one J. A. Daly, in different corporations, of the value of about $4,500. The second indictment charged that he did steal, take and carry away similar property belonging to a different person of the value of about $15,888. The offenses charged are of the character that was formerly designated as obtaining money under false pretenses. In support of the claim that the verdict is contrary to the evidence, it is urged that the complaining witnesses received for their property all that defendant agreed to give them and hence there was no crime committed. We cannot subscribe to this conclusion as we are of the opinion that there is ample evidence in the record to show that defendant with fraudulent intent was engaged in an unlawful enterprise or scheme designed to prey upon ignorant, credulous and foolish persons.

With reference to the first indictment there is evidence to show that on or about the fifteenth day of May, 1930, defendant accompanied by two young women called upon one James A. Daly at his home. They were familiar with the fact that he owned shares of stock in different corporations. Defendant represented to Daly that he was the owner of a wonderful mine which was producing ore running over $20 a ton and that he desired funds with which to purchase certain machinery. Defendant stated that the mine was in fulll operation and that twenty men were employed on the premises. He exhibited samples of ore

and a vial containing gold dust which he represented came' from the mine. He assured Daly that he would make large profits in a few months. The securities that Daly owned had cost him some $4,500 but had suffered a depreciation in value. Defendant informed Daly that he would give him his note for an amount equal to the original cost of the securities and in addition thereto an interest in the mine if he would put his stock in the venture. Daly was given the further assurance, which was false, that he could not possibly suffer a loss, as defendant carried life insurance in the sum of $100,000 and he would see to it that, in the event of anything happening to him, Daly's funds would be protected. Acting upon these representations Daly went to his bank, withdrew his securities and indorsed and delivered them over to defendant who in turn delivered to Daly his promissory note as agreed. The next day defendant sold the securities for the sum of $2,825. The evidence further shows that while defendant had a deed to the mine, it was not in operation, no men were employed thereon, and in fact it had not been in operation for a long time.

The evidence in support of the second indictment is of a like character. It shows that on about the sixth day of September of the same year, defendant interviewed one Pierre Cerise and represented to him that he was the owner of a mine located in Calaveras County with some 200 acres adjoining thereto; that it was in full operation, some sixteen men being employed therein. Cerise, like Daly, was the owner of certain securities for which he had paid the sum of $15,888. The securities had also depreciated in value. Defendant informed Cerise that in the event of his investing in the mine he would give him his promissory note for the original cost of the above securities and in addition thereto a two per cent interest in the mine. He further stated that he would hold the stock in escrow under certain conditions. Acting under these representations Cerise thereupon indorsed and turned over his securities to defendant who sold them the next day for a sum several thousand dollars less than their cost. It appeared in evidence that defendant did not own this particular mine but simply held an option to purchase the same for which he had paid the sum of one dollar. The

mine was not in operation as represented nor were any men employed on the premises.

For the purpose of showing motive and intent, evidence of other grand thefts committed by defendant in connection with the mining property was offered and received, and it appears therefrom that defendant secured large sums of money by reason of his false and fraudulent scheme. It is argued that the statements that the mines would pay large profits is but an expression of opinion of something to occur in the future and therefore not what the law designates as a false pretense. Admitting this to be true, there were other representations as to existing and past facts which were untrue and made with the design of fraudulently obtaining possession of the property of the complaining witnesses. The evidence is ample to sustain the charge in both indictments.

And, finally, it is claimed that the charges against defendant are wholly lacking in the corroboration required by section 1110 of the Penal Code. The claim is without merit. The corroboration required by the section invoked may consist of statements made to others similar in character to the fraudulent ones relied upon by the prosecuting witness. (*People* v. *Whiteside,* 58 Cal. App. 33 [208 Pac. 132].) As above indicated the record contains such statements.

The judgment and order are affirmed.

Cashin, J., and Knight, J., concurred.