[Crim. No. 1626.   Third Appellate District.—August 17, 1938.]

## THE PEOPLE, Respondent, v. PAUL J. LA FRANCE, Appellant.

Oliver G. Hardy for Appellant.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was convicted on two counts of an information charging him with grand theft in defrauding the owner of certain shares of securities, and of another count accusing him of dealing in and selling securities without having procured a permit therefor from the commissioner of corporations, contrary to the Corporate Securities Act of California. From the judgment which was accordingly rendered against him and from the order denying a new trial this appeal was perfected.

It is contended the verdicts and judgments are not supported by the evidence as to any of the three counts, and that the district attorney was guilty of prejudicial misconduct in his examination of witnesses during the trial and in his argument to the jury. It is asserted the alleged fraudulent representations by means of which the defendant secured possession of the property in question were not material inducements which prompted the owner to part with her securities; that they did not constitute representations of past or existing facts, but, on the contrary, that they were mere opinions regarding the future value of certain bonds for which the securities were exchanged, and that the alleged false representations were not corroborated as required by section 1110 of the Penal Code.

We are of the opinion that the verdicts finding the defendant guilty on two counts of grand theft and a third count of a violation of the Corporate Securities Act, together with the judgment which was rendered accordingly, are sufficiently supported by the evidence, and that the evidence of the fraudulent representations by means of which the defendant secured the property in question, testified to by the prose-

cutrix, is adequately corroborated by circumstances sufficient to comply with the requirements of section 1110 of the Penal Code.

There are conflicts of evidence on several material issues in this case, but it satisfactorily appears that the defendant deliberately defrauded Ora Combs, an elderly retired school teacher of Red Bluff, of two certificates of ''Trusteed Estates of Oregon'' and one investment certificate of the ''Mercantile Acceptance Company'', by means of false and fraudulent representations, and that he sold and transferred securities without having procured a permit to do so as required by the Corporate Securities Act of California. Certificate number C–1573 of ''Trusteed Estates of Oregon'' was owned by Ora Combs and fully paid for in the sum of $1200. Certificate number C–1588 in the same company was for the principal sum of $6,000, upon which she had paid the sum of $602. The investment certificate in the ''Mercantile Acceptance Company'' was for the principal sum of $4,000, and was in the nature of a bond to be matured in ten years from its date by the payment of annual instalments of $301, upon which she had paid about $600. At the time the defendant procured the last-mentioned certificate it had a surrender value of $350. The two ''Trusteed Estates of Oregon'' certificates then had a surrender value of about $1250. The evidence is undisputed that these three certificates were of the values last stated.

It is not contended the defendant had a permit from the corporation commissioner to sell or deal in securities. About October 5, 1937, he appeared at the residence of Ora Combs in Red Bluff, armed with a long list of persons in that vicinity who held investment securities. He lived in southern California, and had never before met her. He told her he had been sent by a friend of hers to help her get rid of her securities by exchanging them for sound securities. When the defendant was urged to reveal the name of the friend who had sent him to Miss Combs, he said it was Nettie Baciarini, now Mrs. Anders, who had told him she ''had lost a great sum of money in the Trusteed Estates''. He said, ''Miss Combs, you don't want to lose your money, do you?'' He told her he could exchange her securities for municipal bonds of the City of Cisco, Texas, which were just as good as government bonds or cash, and that she could thereby get back and

save every cent she had put into her investment securities. He told her positively that she could clip the interest coupons from the Cisco bonds every six months and cash them for at least $60 a year. Relying upon those statements, Miss Combs agreed to permit him to exchange her securities for the Cisco bonds.

She went with the defendant to her safe deposit box in the local bank and assigned and delivered them to him about a month after his first visit to her. He promptly deposited them with a bank for collection, drawing upon the respective companies for the surrender value of each certificate. It was several weeks before Miss Combs heard of him again. She finally succeeded in reaching him by telephone. He apologized for the delay, saying he had been seriously ill. He did finally purchase six Cisco bonds of the matured value of $330 each, payable November 1, 1974, with interest gradually increasing from one per cent until November, 1936, two per cent from that date until November, 1940, etc. These bonds cost him only thirty cents on the face value of the bonds. Later he procured two other similar bonds with which to replace her Mercantile Acceptance Company bond, which he delivered to her December 4, 1937. It does not appear what he paid for the last-mentioned Cisco bonds, but the City of Cisco defaulted in the payment of interest on those bonds, and Miss Combs never realized any interest on them. They were quoted on the market for ten or fifteen per cent of the face value thereof.

When Miss Combs took the coupons from the Cisco bonds to her bank for collection, she was notified of the uncertain value and character of the bonds. She was unable to recover her interest on the bonds, and she soon learned of the fraud which had been perpetrated upon her. It appears without conflict that Miss Combs was defrauded of her investment certificates which then had an actual surrender value in excess of $1600 by the false and fraudulent representations which the defendant made to her. It is clear that she parted with her property relying upon the truthfulness of the statements which he made to her regarding the uncertainty of the values of her own securities, and the assurance of unquestionable value and security of the Cisco bonds.

The false representations which the defendant made were regarding alleged past and existing facts. He told Miss

Combs that her friend Nettie Baciarini had told him she had lost a great sum of money on her certificates of Trusteed Estates of Oregon, and that Miss Baciarini had sent him to her to help exchange her certificates for reliable securities. Nettie Baciarini, who afterwards married Mr. Anders, took the witness stand and testified that she had never owned certificates of the Trusteed Estates of Oregon, that she had never met the defendant, and did not tell him she had lost money in any securities, nor ask him to see Miss Combs about her investments. The defendant positively assured Miss Combs that in exchanging her securities for the Cisco municipal bonds she would get back every cent she had invested in them, that the Cisco bonds were as good as government bonds or cash, and that she would be assured of being able to collect at least $60 interest on her Cisco bonds each year by merely clipping the coupons and depositing them in her bank for collection. All of those statements were false, as the defendant must have known. Those and other statements made by the defendant furnish ample evidence of false statements of pretended existing and past facts.

█ The record contains adequate corroboration of the false and fraudulent representations of the defendant to which the prosecutrix testified to comply with the requirements of section 1110 of the Penal Code. That section does not require the false pretenses to be established by two witnesses. It is sufficient if the testimony of the person defrauded is satisfactorily corroborated by material circumstances. (Sec. 1110, Pen. Code; *People* v. *Munson,* 115 Cal. App. 694 [2 Pac. (2d) 227]; *People* v. *Fisher,* 116 Cal. App. 243 [2 Pac. (2d) 564]; 8 Cal. Jur. 178, secs. 256, 257.) The circumstances under which the defendant first interviewed Miss Combs, the contradiction of Nettie Baciarini of the defendant's false story regarding her loss of money in similar Trusteed Estates securities, together with the testimony of Mr. and Mrs. Elliott of Orange County, California, who told the jury of being defrauded of certain securities by similar false and fraudulent representations made to them by the defendant and his partner, Mackreth, and the testimony of C. E. DeBell and A. W. Marshall regarding similar false representations made to them by the defendant affecting the same Cisco municipal bonds all tend to corroborate the prosecuting witness in her story regarding the manner in which

she was defrauded. There is ample corroboration in the present case to conform to the requirements of the statute.

■ The appellant has assigned certain statements which were made by the district attorney in his argument to the jury and in the progress of the trial, and questions propounded by him in the cross-examination of the defendant as prejudicial and reversible errors. We are of the opinion the challenged questions and statements do not constitute prejudicial or reversible error.

On cross-examination by counsel for the defendant of Miss Ora Combs, the prosecutrix, with reference to her certificate number C–1588 for shares in the "Trusteed Estates of Oregon", which was payable in instalments, and upon which she had paid the aggregate sum of $600, she was asked: "Q. Did you understand from your reading of this paragraph that instalments were due 'annually, semi-annually, quarterly or monthly, as the case may be, reckoning from the date of the within certificate'?" To this question the district attorney objected on the ground that it was incompetent and immaterial. In his argument regarding the competency of the evidence sought to be elicited, he finally said: "The fact is that those were her property and she was entitled to keep them and not be defrauded of them." The latter statement was assigned as error. The court specifically instructed the jury to disregard the statement.

With respect to the second assignment of error, the district attorney was examining a witness by the name of DeBell regarding the defendant's misrepresentation to him as to his mission in Tehama and adjacent counties about the time that he procured the securities from Miss Combs. The witness was asked: "Q. Is that the gentleman [the defendant] that called on you last fall in Gridley, . . . In November of last year, 1937? A. That's right." To that question the defendant objected on the ground that it was "too remote". The information charges the defendant with defrauding Miss Combs of her securities on November 5, 1937. The evidence was therefore not too remote. But counsel for the defendant insisted that it was too remote and therefore incompetent. The court asked him if he had any authority to submit on that subject. He asked the court to allow him to present the authorities after the luncheon hour. The district attorney insisted on an adjournment at that time to settle the matter,

and said, "We will see whether counsel is bluffing or whether he has some authorities." This statement was assigned as prejudicial, and the court promptly instructed the jury to disregard it.

With respect to the third assignment of prejudicial misconduct, the district attorney was examining Doctor Freudenthal to show that the defendant was operating in Tehama and other counties about the time he was charged with defrauding Miss Combs in an attempt to also procure certain securities from him. The witness described the man with whom he negotiated as a heavy-set person, wearing a gray overcoat and a light hat, which, we assume, corresponded with the description of the defendant. To that statement the defendant objected, saying, "There may be hundreds and thousands of men heavy set and wearing a gray overcoat and soft hat. As a matter of fact, I have one of each but I am not heavy set, probably." To that remark the district attorney replied, "They are not going through Gridley exchanging securities in the middle of November, 1937." Upon request, the court once more promptly instructed the jury to disregard the remark. The answer was invited by the improper statement made by the attorney for the defendant. Both remarks were improper. The episode illustrates a too frequent exchange of wits which occur in the heat of many contested criminal trials. We do not approve such conduct, but we assume jurors make due allowance for such incidents. It was not prejudicial misconduct.

The fourth assignment was similar in nature to the last-mentioned one. Again the court instructed the jury to disregard the remark of the district attorney.

The fifth assignment arose on cross-examination of the defendant with relation to his handling and disposition of numerous Cisco City bonds, some of which he exchanged with Miss Combs. He was attempting to make it appear that he bought and owned the bonds and that he therefore had a right to sell them without the corporation commissioner's license to do so. After a lengthy examination on that subject, the district attorney said: "Well, you managed by tremendous effort, did you not, to accumulate *quite a smear of these?*" The defendant objected to the use of the word "smear" as improper. The objection was sustained. No ap-

plication was made to instruct the jury to disregard that question.

In the course of a strenuous cross-examination of the defendant, in which he had expressed his disbelief in the testimony of a certain witness, he was asked: "Q. Have you had any occasion to doubt the honesty of the Elliotts?" To this question he replied, "That would all depend on what you are talking about." The district attorney then said, "You are a very evasive man, are you not, Mr. La France?" To that question the attorney for the defendant objected. The objection was sustained. It was then assigned as prejudicial misconduct. Again the district attorney charged the defendant on the witness stand with deliberately falsifying his testimony. The questions were clearly improper. A prosecuting officer should temper his remarks and refrain from saying things or conducting himself in a manner which may tend to prejudice the jury. The examination of witnesses should be conducted with dignity, decorum and due consideration. If the conduct or answers of a witness appear to be evasive or false, a prosecuting officer has a right to call the jury's attention to those facts in the course of his argument. In the present case the district attorney was greatly irritated and annoyed by the attitude of the defendant and his counsel. That fact may excuse to some extent the indiscreet remarks which he uttered. We do not commend them, but, under the circumstances of this case, we are of the opinion they do not constitute reversible error.

We are also of the opinion the statements of the district attorney made to the jury in the course of his argument which are challenged by the appellant do not constitute reversible error. At most they indicate merely indiscretion and excessive zeal prompted by irritation caused by the heckling of adverse counsel. We are confident the jury was not prejudiced against the defendant on that account. We must assume average jurors have sufficient sound reason to thoroughly understand and make due allowance for such controversies between counsel in the course of a spirited trial. We are satisfied the verdict and judgment in this case are not the result of a miscarriage of justice.

The judgment and the order are affirmed.

Pullen, P. J., concurred.