[Crim. No. 22413. Second Dist., Div. Three. Oct. 26, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARK RAYMOND KEEFER, Defendant and Appellant.

**COUNSEL**

J. Anthony Bryan, Kaplan, Livingstone, Goodwin, Berkowitz & Selvin and Herman F. Selvin for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Russell Iungerich and Steven V. Adler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ALLPORT, J.**—Defendant appeals from a judgment (order granting probation) made following his conviction by a jury of two counts of grand theft

(Pen. Code, § 487, subd. 1) and one count of attempted grand theft (Pen. Code, §§ 664, 487, subd. 1). He was acquitted of five additional counts of attempted grand theft. The appeal lies. (Pen. Code, § 1237, subd. 1.)

It is contended on appeal that (1) the evidence is insufficient to support the convictions, (2) the jury was incorrectly instructed, and (3) the order granting probation is constitutionally defective.

■ On appeal based upon insufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prevailing party and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*People* v. *Mosher,* 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].) Defendant admits that the evidence was in substantial conflict, and proceeds to argue that certain insufficiencies exist not as a matter of fact but as a matter of law. We shall therefore refer only to those portions of the record as are deemed necessary to a resolution of the claims made in the context of arguments as presented.

## Facts

It appears without conflict that at the time in question defendant conducted a furnace business in the Santa Barbara area known as Home Furnace Company. The victim of the theft charged in the first of the counts of which defendant was convicted was a Mrs. Elise Reck and in the second a Mrs. George Primbs. The victims of the attempted theft charged in the sixth count of which defendant was also convicted were a Joseph and Esther Padilla, Jr. In each instance the victim had first contacted Home Furnace Company relative to furnace service and each was told by defendant that the existing furnaces were unsafe, beyond repair and would have to be replaced.

During the Reck transaction in September of 1970 defendant stated to her that he had an opportunity to get a good used, practically new furnace in fine condition that he would guarantee for 10 years. Mrs. Reck agreed to buy the furnace for $495. A furnace was then installed by defendant. Mrs. Reck testified that she would not have purchased the furnace if she had known it was actually 11 years old and unless it was guaranteed for 10 years. She denied that the guarantee was the principal inducement but rather that the inducement was that she wanted to get into the house which she was then buying so her husband could be brought home from the hospital. It was proved that this furnace was in fact over 11 years old. Following installation Mrs. Reck discovered that the furnace did not work right

and made numerous calls to defendant. Eventually, after she contacted the district attorney's office, defendant replaced the furnace.

Mrs. Primbs testified that in July of 1970 after defendant told her of the need for a new heater he said he just happened to have a used furnace that was only five years old and in good condition. She and her husband agreed that they would not buy a used furnace that was over five years old. She paid defendant $450 for the furnace. She would not have purchased the furnace if she had known it was actually 13 years old. It was proved to be in fact over 12 years old.

Esther Padilla testified that in October 1971 she had her furnace cleaned and checked by Home Furnace. Defendant told her by telephone that her furnace was very dangerous and that she needed a new one which would cost about $450. Later a price of $375 was agreed upon. Thereafter, while in the process of removing the existing furnace from her house Home's employees were arrested by representatives of the district attorney's office. It had been dismantled and the parts removed from the house. Mrs. Padilla was first contacted by the district attorney's office after defendant told her she needed a new furnace. She agreed to purchase the furnace from defendant after being contacted by representatives of the district attorney's office and had had others inspect the old furnace. The old furnace was removed from the premises by the district attorney. She later bought a new furnace from a Mr. Grossman. The old furnace was inspected and found to be safe or in perfect working order. There were no fractures or ruptures in the firebox.

### Discussion

With respect to the contention of insufficiency of the evidence it is first claimed that the evidence was insufficient to support a conviction of theft because the testimony as to false pretenses was not corroborated.[1] We do not agree. Basically defendant argues that the false pretenses forming the gravamen of the crimes were testified to by only the victims and were not corroborated by a second witness or by circumstances surrounding the same transaction. He argues that testimony of a false pretense made in connection with one transaction separate and distinct from another, taking place at different times and in different circumstances does not satisfy the requirement of section 1110 and the rule of *People* v. *MacEwing,*

[1]Penal Code section 484 defines theft as the defrauding of any person of money, labor or property by any false or fraudulent representation or pretense.

Penal Code section 1110 requires that in a trial for obtaining money by means of a pretense made orally, the pretense must be proved by two witnesses or one witness and corroborating circumstances.

45 Cal.2d 218, 223-225 [288 P.2d 257] as to sufficiency of corroboration. In support of this argument defendant refers to and cites from *People* v. *Curran,* 24 Cal.App.2d 673, 676 [75 P.2d 1090], and forcefully suggests that the rule of cases holding to the contrary, i.e., that the requirements of section 1110 as to circumstantial corroboration may be satisfied by proof that a defendant made similar representations or pretenses in separate transactions is sufficient, should not be followed by this court. However, we deem our decision controlled by *People* v. *Weitz,* 42 Cal.2d 338 [267 P.2d 295], certiorari denied, 347 U.S. 993 [98 L.Ed. 1126, 74 S.Ct. 859], and *People* v. *Ashley,* 42 Cal.2d 246 [267 P.2d 271], certiorari denied, 348 U.S. 900 [99 L.Ed. 707, 75 S.Ct. 222]. In *Weitz, supra,* the Supreme Court, in upholding convictions of grand theft, said at page 347: "It is argued that the trial court erroneously admitted the testimony of various retailers whose dealings with Weitz and Zesto were not involved in the indictment. This testimony was to the effect that their deposits were not refunded and that they had not received stores or equipment. Inasmuch as the evidence related to transactions similar in material elements to the ones forming the basis of the indictment, it was admissible to show defendant's criminal intent and to corroborate the evidence of. false pretenses. (*People* v. *Gordon,* 71 Cal.App.2d 606, 632 [163 P.2d 110]; *People* v. *Robinson,* 107 Cal.App. 211, 224 [290 P. 470]; cf. *People* v. *Jones,* 36 Cal.2d 373, 378-379 [224 P.2d 353].)" In *Ashley, supra,* the same court, also speaking of theft by false pretenses, said at pages 267, 268: "Defendant also contends that the necessary proof of 'corroborating circumstances' is lacking. It is the duty of the reviewing court to examine the evidence to determine whether the corroboration required by the statute has been proved; the weight to be given such evidence is for the jury."

"In addition, the fact that a defendant has made the same or a similar representation to another, although at a different time and place, is a corroborating circumstance. (*People* v. *Jones,* 36 Cal.2d 373, 379 [224 P.2d 353]; *People* v. *Chait,* 69 Cal.App.2d 503, 516 [159 P.2d 445]; *People* v. *McCabe,* 60 Cal.App.2d 492, 497 [141 P.2d 54]; *People* v. *La France,* 28 Cal.App.2d 152, 156 [82 P.2d 465]; *People* v. *Fisher,* 116 Cal.App. 243, 246 [2 P.2d 564]; *People* v. *Whiteside,* 58 Cal.App. 33, 41 [208 P. 132].) In the present case, essentially similar representations were made to each of the women. There is not only the similarity in express representations, but in basic approach, offers of employment, and repeated supplications. They may therefore corroborate each other. (*People* v. *Jones, supra.*)" Viewing the evidence in the light most favorable to the prosecution and in accordance with the rules of *Weitz* and *Ashley* as to sufficiency of the corroborating evidence, we conclude that the techniques employed by de-

fendant in the Reck, Primbs and Padilla transactions, even though separate and distinct one from the other, were sufficiently similar in nature to comply with the requirements of section 1110 and of *MacEwing, supra,* as to corroboration. In each situation the victim had contacted Home regarding furnace service and in each was told that her furnace was beyond repair and dangerous. Each was told that a used one in good condition could be supplied at a reduced price. The transactions were each strikingly similar and the modus operandi was such as to provide proof of defendant's participation in each. It is not our function to undertake a reexamination of the *Weitz* and *Ashley* decisions with a view to enunciating and enforcing a different rule of law even though such a rule may have been announced in an isolated earlier decision of an intermediate appellate court in which a hearing was denied. (See *Goncalves* v. *S. F. Unified School Dist.,* 166 Cal.App.2d 87, 89 [332 P.2d 713].)

█ It is secondly claimed that essential elements of the crime of theft —knowledge of falsity and causation—were lacking in the evidence. It is suggested that there is no evidence that defendant knew that his statement as to the age of the furnaces was false and that Mrs. Reck did not rely upon and was not induced to buy by the alleged false pretense. We do not agree.

Defendant testified that he advised Mrs. Reck that the furnace to be sold her was approximately 11 or 12 years old. He advised Mrs. Primbs that the one to be sold her was over five years old. He did not know how old it actually was. If believed by the jury these statements established defendant's knowledge as to the age of the furnaces. According to Mrs. Reck defendant described the furnace as being "practically new" and to Mrs. Primbs that her furnace to be was "only five years old." Such testimony, if believed, coupled with the fact that defendant was in the furnace business, is sufficient to permit of a reasonable inference that defendant knew that his statements with respect to age were false. Both Mrs. Reck and the Primbs testified that they would not have bought the furnaces unless defendant's statements to them respecting age were true. The jury impliedly determined that these statements as to age were not only knowingly false but had a material influence in the decision of the victims to buy. In *People* v. *Ashley, supra,* 42 Cal.2d 246, 266, the court said: "It was for the jury to sift the true from the false, to determine the credibility of the witnesses and the weight to be given the testimony of an individual witness, even if it was inconsistent. (*People* v. *White,* 115 Cal.App.2d 828, 831 [253 P.2d 108]; *People* v. *Frankfort,* 114 Cal.App.2d 680, 700 [251 P.2d 401]; *People* v. *Moulton,* 71 Cal.App.2d 195, 197 [162 P.2d 317].)" While the evidence discloses there were other false statements as to condition of the furnaces that could be inferred to have motivated the sales, and that

there were additional motives for purchase not necessarily attributable to defendant's sales pitch, which did likewise, the false pretenses alluded to need not have been the sole inducing cause. The representations as to age were sufficient in themselves. In *Perry* v. *Superior Court,* 57 Cal.2d 276 [19 Cal.Rptr. 1, 368 P.2d 529], it was said at pages 285-286: "But ' "the express testimony of a victim of false pretense that he was induced to part with his money by the fraudulent statements of the accused is not essential. It is sufficient if the inference of his reliance could have been drawn from all of the evidence." ' (*People* v. *Schmidt,* 147 Cal.App.2d 222, 228 [305 P.2d 215]; accord *People* v. *Gordon,* 71 Cal.App.2d 606, 626 [163 P.2d 110].)"

" 'The false pretense or representation must have materially influenced the owner to part with his property, *but the false pretense need not be the sole inducing cause.*' (*People* v. *Ashley, supra,* 42 Cal.2d 246, 259.) (Emphasis added.)"

■ Thirdly it is claimed with respect to the insufficiency of the evidence as to the crime of attempted theft that defendant's acts were but preparatory and did not rise to the dignity of an attempt. Again we do not agree. Penal Code section 664 describes an attempt as follows: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable . . . ." The question of preparation versus attempt has been the subject of numerous cases. Defendant relies heavily on *People* v. *Buffum,* 40 Cal.2d 709, 718 [256 P.2d 317], holding that "Preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature." On the other hand, the People suggest that *Buffum* is not an accurate restatement of the California law of attempt citing *People* v. *Staples,* 6 Cal.App.3d 61 [85 Cal.Rptr. 589], wherein the court quotes from *People* v. *Anderson,* 1 Cal.2d 687 at page 690 [37 P.2d 67], holding that where the design to commit the crime is clearly shown, slight acts in furtherance of the design will constitute an attempt. In *Staples* it was held that the overt act sufficient to bring about an attempt need not be the last proximate or ultimate step towards commission of the substantive crime. It is sufficient if it was a step in a direct movement towards that end after the preparations were made.

We do not deem it necessary to attempt to rationalize or reconcile the existing case law in deciding the case at bench. When viewed as we must the evidence and reasonable inferences to be drawn therefrom establish not only that preparations had been made for commission of the crime but

an appreciable fragment of the crime had taken place. Defendant had told Mrs. Padilla that her furnace was in bad shape, dangerous, and that she needed a new one. He offered to sell her a replacement and after a period of negotiations the price was agreed upon. Two or three days after Mrs. Padilla agreed to buy workmen from Home Furnace came and dismantled and removed the old furnace. The parts were carried outside the house. A new furnace was delivered ready to be installed before the old one was removed. It was at this point that representatives of the district attorney's office stepped in and terminated the transaction. It is a reasonable inference that defendant not only was prepared and intended to, but was in the process of committing the crime when the interception came. All that was left for defendant to do was to install the replacement furnace and collect the money. It seems clear that defendant was, as section 664 says, "prevented or intercepted in the perpetration" of the crime. The crime had progressed to the point that it was reasonable to infer that it would have been completed except for the intervention of a circumstance independent of the will of defendant, to wit, the arrests.

We conclude that, in the light of Penal Code section 664 and the tests enunciated in either *Buffum* or *Staples,* the evidence and reasonable inferences to be drawn therefrom were sufficient to establish an attempt.

 It is further argued in this connection that the acquittal of defendant of five other counts of attempted theft under similar circumstances compels the conclusion that he should be acquitted as to the Padilla attempt on the theory of collateral estoppel. That argument is not persuasive of reversal of count VI. We are referred to no authority holding that collateral estoppel is applicable to the facts of the case at bar. We are not dealing with a situation of two trials involving the same parties. On the contrary, Penal Code section 954 permits the charging of different offenses of the same class of crimes under separate counts and provides, "An acquittal of one or more counts shall not be deemed an acquittal of any other count." In discussing this section the Supreme Court said in *People* v. *Amick,* 20 Cal.2d 247 at pages 251-252 [125 P.2d 25]: " 'The rule contended for by appellant might possibly apply if he had been acquitted of count 1 and thereafter a new and different information was filed charging him with negligent homicide and he was again placed on trial.

" 'In *People* v. *Day, supra,* page 83, it was said: "This is the test used to determine the validity of a plea of once in jeopardy interposed to a subsequent indictment after an acquittal or conviction upon one indictment. Of course, no plea of twice in jeopardy or former acquittal was or could have been made by the defendant in this action inasmuch as she was tried but

once. It should be noted, however, that all of the rules applicable to a plea of once in jeopardy do not have application to a determination of whether the offenses stated in different counts of an indictment are identical."

" 'We believe the effect of the amendment of section 954 of the Penal Code in 1927 was given careful consideration in the case of *People* v. *Ranney,* 123 Cal.App. 403 [11 P. (2d) 405], where a similar argument was presented. It was there said:

" ' "The disposition of one count had no bearing upon the verdict with respect to other counts, regardless of what the evidence may have been. Each count must stand upon its own merit. The amendment to section 954 of the Penal Code conclusively settles this controversy adversely to the contention of the appellant. That section provides for the charging of 'two or more different offenses of the same class of crimes or offenses, under separate counts.' That section, as amended in 1927, then provides that, 'A verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count.' This language clearly means that each count in an indictment or information, which charges a separate and distinct offense must stand upon its own merit, and that a verdict of either conviction or acquittal upon one such charge has no effect or bearing upon other separate counts which are contained therein . . . There are no authorities to the contrary in other jurisdictions where a statute exists similar to the California law above quoted." ' " In *People* v. *Coakley,* 108 Cal.App.2d 223, 229-230 [238 P.2d 633], it was said: "Miss Adams contends that the verdict of guilty on Count I vitiated the verdict of not guilty on Count II. She argues that the evidence against her shows only one conspiracy by means of which the Reyes couple were to obtain specific personal property for appellants, citing *Oliver* v. *Superior Court,* 92 Cal. App. 94 [267 P. 764]; *In re Johnston,* 3 Cal.2d 32 [43 P.2d 541]; *People* v. *Bales,* 74 Cal.App.2d 732, 734 [169 P.2d 262]. Such contention is contrary to the clear letter of section 954 of the Penal Code, to wit, 'a verdict of acquittal of one or more counts shall not be deemed or held to be an acquittal of any other count.' Each count in a pleading charges a separate and distinct offense and stands upon its own merits. If one falls its failure does not affect the course taken upon the remaining counts and their strength and the force of the evidence produced as proof of them cannot give support to one whose proof is lacking. A verdict of acquittal of one count is not acquittal of any other count. (*People* v. *Van Os,* 96 Cal. App.2d 204, 206 [214 P.2d 554].)"

It is also contended that the jury was incompletely and incorrectly instructed relative to the questions of corroboration and intent. Our function

with respect to review of the jury instructions is clearly mandated by California Constitution article VI, section 13, wherein it is said: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

In the instant case the jury was told that the crime of theft may be committed by false pretense and that defendant could not be convicted unless the pretense be proved by the testimony of one witness and corroborating circumstances. It was also instructed that if it was believed that defendant made similar false representations or pretenses to persons other than the owner such evidence was sufficient corroboration. In view of our conclusion above with respect to the applicable law and the sufficiency of the evidence, we deem the instructions given on the subject to be correct. We do not subscribe to defendant's views as to the law of corroborating in the crime of theft by false pretenses. The instructions were sufficiently complete to enable the jury to resolve the issues presented to it for decision. (See *People* v. *Hill,* 66 Cal.2d 536, 556 [58 Cal.Rptr. 340, 426 P.2d 908], cert. den., 389 U.S. 993 [19 L.Ed.2d 487, 88 S.Ct. 492], 390 U.S. 911 [19 L.Ed.2d 884, 88 S.Ct. 838]; *People* v. *Wade,* 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *MacEwing, supra,* 45 Cal.2d 218, 224.)

▮ In his brief defendant argues that the jury was not told, although no request to do so was made, that the corroboration, by itself and independent of the testimony being corroborated, must tend to connect defendant with the crime, nor was it told that the corroboration was insufficient if, in order to show that connection, it had to take interpretation and direction from the testimony that had to be corroborated. Defendant also suggests other innovations and refinements regarding jury instruction on the subject of corroboration and related matters. While the instructions deemed by him to be necessary were not offered to the trial court nor are they before us for detailed consideration, the argument presented does not indicate that they would be of such a nature as to require that they be given *sua-sponte.* ▮ While it is true that the failure to give unrequested instructions can be urged, and in a proper case may be grounds for reversal (*People* v. *Putnam,* 20 Cal.2d 885, 890 [129 P.2d 367]), "[r]eviewing courts will scrutinize with great care any claim of prejudicial error predicated solely upon the omission of the trial court to give of its own motion an instruction, the propriety of which is indicated solely by

the condition of the evidence." (*People* v. *Davis,* 43 Cal.2d 661 at p. 674 [276 P.2d 801].) In applying this rule to the case at bench we are convinced that the failure of the trial court to instruct *sua sponte* along the lines suggested by defendant in his brief did not result in a miscarriage of justice in this case. Assuming arguendo that some of the propositions advanced were legally sound and properly worded instructions thereon could have been submitted, we are not prepared to say that the jury would have had any clearer understanding of the applicable law had such been given than that which they had under the charge as made. In any event we are satisfied from a review of the entire matter that the instructions to the jury did not result in a miscarriage of justice in this case. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal.2d 818, 834-838 [299 P.2d 243], cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70].)

 Finally it is contended that the condition of probation that defendant should "[n]ot engage in the furnace or heating business either directly or indirectly" must be stricken. It is argued that a condition of probation requiring one to give up a fundamental or constitutional right is in and of itself unconstitutional. We do not agree that one cannot be compelled to give up a fundamental or constitutional right as a condition to the granting of probation. In *People* v. *Mason,* 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630], a condition requiring that probationer submit to a warrantless search by police officers at any time was held to be valid. The right to be free from unreasonable search and seizure is a constitutionally guaranteed right and fundamental in every sense of the word. The contention that one cannot be compelled to give up such a right is not therefore dispositive of the issue. Further consideration should be given to the scope of the sentencing and probationary power of the trial judge as such is explained in *In re Allen,* 71 Cal.2d 388 at page 393 [78 Cal.Rptr. 207, 455 P.2d 143] as follows: "The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to the granting of probation to defendants and the conditions thereof. (See Pen. Code, § 1203 et seq.) We recognize the heavy responsibility of a trial judge in reaching this determination and that it should remain as free from extraneous pressures as possible." In *In re Bushman,* 1 Cal.3d 767, 776 [83 Cal. Rptr. 375, 463 P.2d 727], the court also commented on the "broad discretion" of the court in the granting of probation. In *People* v. *Mason, supra,* at page 764, the court enunciated the standard which a condition of probation must meet as follows: "Turning to the question of the validity of the condition as we have interpreted it, we are guided by the principles set forth in *In re Bushman, supra,* 1 Cal.3d 767, 776-777, as follows: 'When granting probation, courts have broad discretion to impose

restrictive conditions to foster rehabilitation and to protect public safety. Penal Code section 1203.1 authorizes the court to impose any "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, . . . and specifically for the reformation and rehabilitation of the probationer." If the defendant considers the conditions of probation more harsh than the sentence the court would otherwise impose, he has the right to refuse probation and undergo the sentence. [Citations.] In such case he may challenge the legality of any proposed conditions of probation on an appeal from the judgment or on habeas corpus. [Citations.]. . . .

" 'A condition of probation imposed pursuant to Penal Code section 1203.1 is invalid if it (1) has no relationship to the crime of which the defendant is convicted, (2) relates to conduct that is not itself criminal, or (3) requires or forbids conduct that is not reasonably related to future criminality. [Citation.]' "

 In applying these principles to the facts of the case at bench we conclude that, in depriving defendant from engaging in the furnace or heating business as a condition of probation, the trial court did not abuse its discretion. As pointed out by the People the jury found defendant guilty of a crime practiced by him in the course of his business by misrepresenting facts to his customers for the purpose of material gain. The condition complained of appears reasonably related to the crime of which he stands convicted, and aimed at the deterring of further criminal activity in an effort to foster rehabilitation and to protect public safety. (*In re Bushman, supra,* 1 Cal.3d 767, 776-777.) It is, under the circumstances, a reasonable condition. (Pen. Code, § 1203.1.) The cases relied upon by defendant are factually distinguishable and not otherwise compelling of a contrary decision on this point.

The judgment (order granting probation) is affirmed.

Cobey, Acting P. J., and Loring, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 19, 1973.

---

*Assigned by the Chairman of the Judicial Council.