[Crim. No. 28015. Second Dist., Div. Five. June 30, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
WENDELL McDOWELL, Defendant and Appellant.

**COUNSEL**

Arthur J. Lewis, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ASHBY, J.—Defendant (appellant) appeals from a conviction of violation of Penal Code section 487, subdivision 2, grand theft from a person.

In an information filed April 23, 1975, appellant was charged with two violations of the law. Count I charged a violation of Penal Code section 487, subdivision 2, and count II alleged violation of Penal Code section 496, receiving stolen property. The matter was tried by the court on September 23, 1975. Appellant's motion for acquittal pursuant to Penal Code section 1118 made at the conclusion of the People's case was denied. Appellant was found guilty as charged in count I and acquitted on count II. Appellant was sentenced to three years' probation with various terms and conditions, including that he serve nine months in county jail.

Viewing the evidence as we must on appeal in the light most favorable to the prevailing party below (*People* v. *Mosher*, 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Reilly*, 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]), the facts are as follows: At approximately 8:05 p.m. on February 20, 1975, Mrs. Dorothy Mogstad was returning home and while she was in the process of opening her mailbox her purse was jerked from her left arm. She heard no footsteps prior to the seizure of her purse and was not alerted to anyone approaching her. She turned and saw someone with dark hair wearing a dark jacket running away with her purse. Approximately 10 minutes later, at 8:15 p.m., Officer Gregory Stevens who was proceeding northbound on Kingsley in the City of Los Angeles observed a vehicle parked next to a fire hydrant, in violation of Vehicle Code section 22514.[1] The police unit passed the parked car, turned and proceeded back to its location. As Officer Stevens and his partner, Officer Sewell, approached the car, appellant got out and said he was waiting for a friend. Officer Stevens said that his car was illegally parked. The door was open and the interior light was on. Officer Sewell looked in the car and saw an open purse with its contents strewn on the floor of the vehicle. Officer Sewell told Officer Stevens to place handcuffs on appellant as a suspect in a possible purse snatch. Appellant turned and ran. The officers pursued him on foot, but lost him.

The officers returned to the vehicle to report in. At that time they received information that a purse snatch robbery had occurred approxi-

---

[1]The location of the vehicle was approximately one block from the scene of the crime on south Harvard Avenue.

mately one-half block from their location. They also learned the name of the victim and received a description of the purse. On examining the purse in the car, they found that it contained identification showing that it belonged to Mrs. Mogstad. In the glove compartment of the vehicle, they found a wallet with identification showing that it belonged to appellant. The vehicle registration showed that it was owned by appellant. There were also three traffic citations.

About an hour to an hour and a half later, after appellant's vehicle was impounded and the officers had interviewed Mrs. Mogstad, they were proceeding westbound on Venice Boulevard from Western Avenue when they saw appellant standing at a bus stop still wearing a leather cap and the brown flowered shirt he was wearing when first observed at the vehicle. Appellant wore his hair combed straight down so that his hair protruded from under the cap. At the time of the trial he was still wearing his hair in that style. Officer Sewell got out of the police unit to apprehend appellant, but again he ran and got away.

About 15 or 20 minutes later, Sewell and Stevens received a call concerning a possible suspect at Crenshaw and Venice, which was about a mile and a half from Western and Venice. The suspect had been stopped by other officers while on a bus. Stevens and Sewell arrived and questioned the suspect. He had no identification and told the officers his name was John Williams. He was wearing the same type of clothing, and was the same stature as the suspect the officers had pursued, but he was not wearing a leather cap, and the bus driver and other passengers said that he had boarded the bus at Venice and Western which would have made it impossible for him to be the suspect they were pursuing. Officer Stevens testified that he was "positive in his own mind" that the suspect on the bus was the same person he had attempted to arrest on Kingsley and the same one who had run from the officers at Venice and Western, but because of the statements of the bus driver and passengers he was released at that time. A short time later, however, Officer Stevens received information that a woman had called to say that she had been a passenger on the bus and the suspect questioned by the police had actually boarded the bus at Crenshaw and Venice and not at Western and·Venice as the bus driver and passengers had said.

Appellant was then picked up at his home and brought to the police station. Both Officers Stevens and Sewell identified him as the man on the bus who had said his name was John Williams.

## DISCUSSION

■ Appellant's first contention is that the trial court erred in denying the Penal Code section 1118 motion. In support of this contention, appellant argues that "[t]he testimony by the witnesses for the prosecution firmly established the fact that the appellant is not the perpetrator of the crime he was convicted of . . . ."

There is absolutely no merit to this contention. In effect, appellant is asking this court to reweigh the evidence, which we cannot do. (*People* v. *Mosher, supra,* 1 Cal.3d 379, 395.) Our review of the record shows the evidence to be substantial and clearly in support of the judgment. The basic evidence against appellant was overwhelming. His car was parked within one block of the location of the crime. The victim's purse was found in his car. Appellant fled from the police in order to avoid arrest. When he was questioned on the bus, he gave a false story and a false name. When he was brought to the police station later that night, he was wearing different clothes than the ones he had worn earlier. When asked by the police why he had given a false story when questioned on the bus, he answered, "Man, I was trying to get home. I didn't want to get caught." The brown flowered shirt and leather cap, which fit the description of the purse snatch suspect, were found in appellant's home.

■ Appellant's last contention is that the terms of probation constitute cruel and unusual punishment. As one of the conditions of probation, the court included the requirement that appellant wear leather shoes with metal taps on the heels and toes anytime he leaves his house. Appellant argues that by imposing this condition the court is saying, in essence, "You are a purse snatcher and others must always know of your presence," and that the condition is tantamount "to hanging a sign around the appellant's neck that says, 'I am a thief.' "

Appellant's argument is not persuasive. Appellant makes no showing that all, most or many persons who wear leather soles with metal taps are thieves or are thought to be thieves by the public. His argument that he is somehow identified as a thief by this term of probation is totally unsupported.

■ Merely because a condition is out of the ordinary does not make it constitutionally unreasonable. One of the advantages of probation as an alternative to confinement is that its terms can be tailored by the court

to fit the individual defendant. In granting probation, courts have very broad discretion to impose conditions. ■ As stated in *People* v. *Dominguez,* 256 Cal.App.2d 623, at page 627 [64 Cal.Rptr. 290], "[a] condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid." (Also see *People* v. *Lent,* 15 Cal.3d 481, 486 fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545]; *In re Bushman,* 1 Cal.3d 767, 777 [83 Cal.Rptr. 375, 463 P.2d 727]; *People* v. *Keefer,* 35 Cal.App.3d 156, 169 [110 Cal.Rptr. 597].)

■ The concept of the condition imposed by the court bears a direct relationship to appellant's budding career as a purse snatcher. During the course of the crime of which appellant was convicted in the instant case, he was wearing tennis shoes. This type of footwear helped him to approach his victim silently and facilitated his two successful efforts to outrun the pursuing officers who were trying to apprehend him. The instant offense was appellant's third purse snatch offense. At the time it was committed, he was on probation for a prior purse snatch conviction. Compliance with that term of probation should foster rehabilitation and promote the public safety. The sound of taps would be a reminder to appellant of the fact that he is on probation and that failure to adhere to the terms of that probation would not be to his benefit. In addition, it is reasonable to believe that any temptation appellant might have during his period of probation to further engage in criminal activity of this type would be lessened because of the reduced opportunity for stealth and surprise of potential victims, and the diminished ability to escape by outrunning pursuers.

■ Nevertheless, the particular wording of the condition as imposed in this case is not sufficiently precise. The condition as stated by the court is as follows: "[D]efendant is not to go out of his house unless he is wearing shoes with leather soles and metal taps on the soles and heels."[2]

If the condition means that defendant must wear shoes with taps at all times outside his home, then he would be precluded from participating in most forms of athletic activity such as tennis, baseball, football, golf

---

[2]The clerk's minute order dated October 15, 1975, states the condition in a slightly different language as follows: "DEFENDANT IS NOT TO GO OUT OF HIS HOUSE UNLESS HE IS WEARING METAL TAPS ON HIS SHOES ON SOLES AND HEELS."

and bowling, to mention only a few. If it means that he need only wear them *as he leaves* the house, then the condition will be virtually ineffective. Defendant made no objection to this condition at the time it was imposed. ■ Although a defendant is not precluded from appealing from the imposition of a term of probation by his failure to object to it (*In re Bushman, supra,* 1 Cal.3d 767, 776, 777), it would be beneficial to the courts and to defendants if terms such as the one now complained of were discussed with the court at the time of sentencing.

■ The trial court should have the opportunity to clarify the condition or impose different terms in place of that condition. (*People* v. *Kay,* 36 Cal.App.3d 759, 762 [111 Cal.Rptr. 894]; *People* v. *Williams,* 247 Cal.App.2d 394, 409-410 [55 Cal.Rptr. 550].) Therefore the order granting probation is reversed insofar as the condition is concerned; in all other respects the order is affirmed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

Kaus, P. J., and Stephens, J., concurred.