[No. G003973. Fourth Dist., Div. Three. July 28, 1986.]

WILLIAM C. BRYCE, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE,
Defendant and Respondent.

COUNSEL

James R. Gorman for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Lawrence C. Kuperman, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**CROSBY, Acting P. J.**—A physician whose license to practice medicine was suspended by the Board of Medical Quality Assurance appeals from the judgment denying his petition for writ of mandate.

I

William C. Bryce, M.D., was part owner of and supervising physician for the Arrowhead Medical Clinic between April 1979 and June 1982. He had been licensed in California as an osteopath in 1955 and as a physician and surgeon in 1962. In 1979 he was certificated to supervise physician assistants.

In an accusation filed in November 1982, the Board of Medical Quality Assurance charged Bryce with aiding and abetting the clinic's co-owners and several physician assistants with the unlicensed practice of medicine. Specifically, the charges included authorizing the clinic's co-owner, who was not a medical practitioner of any sort, to give an allergy injection and permitting physician assistants to prescribe drugs on presigned, blank prescription forms. A hearing was eventually conducted before an administrative law judge who recommended the revocation of his license, stayed on condition he be suspended from the practice of medicine for 90 days and placed on probation for five years, and comply with various other requisites.

The board did not adopt the proposed decision of the administrative law judge. It scheduled a new hearing instead, requesting Bryce to be prepared to explain why a more severe discipline should not be imposed.

Following the hearing and review of the documentary evidence and transcripts for the proceedings before the administrative law judge, the board increased the period of probation to ten years and suspended Bryce's license for six months. In addition to the various other conditions of probation recommended by the administrative law judge, the board also required Bryce to pass an oral clinical examination in family practice before reinstatement of his license. Bryce's petition in the superior court for a writ of mandate directing the board to set aside its decision and reconsider the discipline was denied.

## II

■ When ruling on a petition for mandate, the superior court must first determine, in the exercise of its independent judgment, whether the board's findings in the matter are "supported by the weight of the evidence." (*Yellen v. Board of Medical Quality Assurance* (1985) 174 Cal.App.3d 1040, 1057 [220 Cal.Rptr. 426].) If the court agrees the evidence supports the board's findings, it must then examine the discipline imposed.

In so doing, however, the court does not exercise its own judgment and may not substitute "its own . . . discretion for that of the board with respect to the penalty to be imposed." (*Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 968 [103 Cal.Rptr. 455].) Unless there has been an abuse of discretion by the administrative agency, the court may not disturb the board's decision as to discipline.

Here, the superior court agreed the evidence supported the board's findings that Bryce aided and abetted unlicensed individuals in the practice of medicine. (See *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29]; *Yellen* v. *Board of Medical Quality Assurance, supra,* 174 Cal.App.3d 1040, 1057-1058.) Bryce does not challenge this determination on appeal. Rather, he claims the superior court refused to consider whether the penalty imposed by the board constituted an abuse of discretion.

But the court and counsel exhaustively discussed the penalty question during the hearing on the petition; and, referring to *Cadilla* v. *Board of Medical Examiners, supra,* 26 Cal.App.3d 961, the judge correctly described the test as whether the board acted arbitrarily or abused its discretion in disciplining Bryce. The court then observed, "It doesn't really matter what I think as to whether or not it's harsh," and concluded, "I do not find that the board acted arbitrarily or capriciously." This finding was reiterated in the judgment which provided, "the penalty was not an abuse of discretion." Bryce did not request a statement of decision.

## III

■ Did the court err in determining the board's penalty was not an abuse of discretion? We think not. Business and Professions Code section 2227 authorizes the board to revoke or suspend the license of a physician found guilty of unprofessional conduct, to place the physician on probation, and to "[h]ave such other action taken in relation to discipline as the division . . . may deem proper." Per section 2228, the authority to place a physician on probation "includes, but is not limited to . . . [¶] [r]equiring the licensee

to obtain additional professional training and to pass an examination upon the completion of such training.'' Section 2229 adds that the board ''[i]n exercising its disciplinary authority . . . shall, wherever possible, take such action as is calculated to aid in the rehabilitation of the licensee . . . . It is the intent of the Legislature that the division and committees shall seek out those licensees who have demonstrated deficiencies in competency and then take such actions as are indicated, with priority given to those measures, including further education . . . that will remove such deficiencies.''

Here, the board reviewed volumes of documentary evidence and transcripts and received argument to determine whether the discipline recommended by the administrative law judge was appropriate. Finding it was not, the board increased the suspension from 90 days to six months and the probation from five to ten years. In our view, the evidence is more than sufficient to support the longer terms.

Bryce's misconduct demonstrated both professional and moral irresponsibility. And, although he had been warned by the Physicians' Assistant Examining Committee of the Division of Licensing that his practices were unacceptable, he did not change them. Bryce permitted a layman to give injections to patients. He allowed physician assistants to prescribe medication on presigned forms. And he did not even review all the charts subsequently to ensure the medication prescribed was appropriate to the particular case.

■ More than the duration of his suspension and probation, however, Bryce objects to the condition that he pass an oral clinical examination in family practice before his license may be reinstated. He argues this requirement ''bears no relationship to the violations [he] committed . . . [and] is as ludicrous as it would be to require an attorney who has been found to have misused his trust account to retake the Bar Examination as opposed to taking the Professional Responsibility Exam.'' While the claim has some surface appeal, it does not bear close scrutiny.

The severity of the discipline which may be imposed does not depend, as Bryce suggests it should, on whether patients have been injured by the illegal medical practices. (See, e.g., *Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 579 [146 Cal.Rptr. 653].) Similarly, there is no authority for the notion that the board is bound by the discipline proposed by the administrative law judge or even that the penalty must be directly related to the offense.

As one Court of Appeal has observed, ''[t]here is no other profession in which one passes so completely within the power and control of another as

does the medical patient." (*Shea* v. *Board of Medical Examiners, supra,* 81 Cal.App.3d at p. 578.) Consequently, the board is constitutionally permitted to impose discipline where there exists a "nexus between the act or omission and the [professional's] fitness or competence to practice his profession. (*Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254].)" (*Windham* v. *Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461, 466 [163 Cal.Rptr. 566].) Once that nexus is established, the Legislature has empowered the board to impose discipline as it "deem[s] proper" (Bus. & Prof. Code, § 2227); and the propriety of the penalty is for the agency, not the court, to decide. (*Cadilla* v. *Board of Medical Examiners, supra,* 26 Cal.App.3d at p. 966.) The agency's decision will be disturbed only for "a manifest abuse of [its] discretion." (*Ibid.*)

Our courts have long held that the purpose of physician discipline by the board is not penal but to "protect the life, health and welfare of the people at large and to set up a plan whereby those who practice medicine will have the qualifications which will prevent, as far as possible, the evils which could result from ignorance or incompetency or a lack of honesty and integrity." (*Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 331 [308 P.2d 924]; see also *Windham* v. *Board of Medical Quality Assurance, supra,* 104 Cal.App.3d 461, 473.) For this reason, the board is authorized to discipline physicians who have been convicted of criminal offenses not related to the quality of health care. Physicians convicted of tax fraud, for example, may have their licenses revoked or be placed on probation and required to donate their professional services to community health agencies. (*Ibid.*)

In emphasizing the importance of the public's trust in the medical profession, the *Windham* court succinctly concluded, "In short, the purpose of discipline is to make the [licensee] a better physician." (*Ibid.*) The discipline imposed on Bryce satisfies this goal. It in no way impinges a fundamental constitutional right. (See, in contrast, *People* v. *Pointer* (1984) 151 Cal.App.3d 1128 [199 Cal.Rptr. 357].) The acts of misconduct of which Bryce was found guilty—permitting a layman in a family practice clinic to give injections, authorizing physician assistants to prescribe medication, and then failing to review each and every patient chart in which medication was prescribed in that manner—reflect poorly on his common sense and professional judgment. The board was not without foundation for a suspicion that Bryce failed to understand the serious potential dangers involved in injections into the human body or misprescribed medications. To require him to establish in an oral examination before his peers that he has an acceptable level of competence in a specific area of medicine was not only well within the board's discretion, it was virtually mandated.

Judgment affirmed. Respondent is entitled to costs on appeal.

Wallin, J., concurred.

**SONENSHINE, J.,** —I respectfully dissent. Bryce argues there must be some reasonable relationship between the offense and the penalty. I agree.

The authorities upon which the majority relies mandate this conclusion. In *Shea* v. *Board of Medical Examiners* (1978) 81 Cal.App.3d 564 [146 Cal.Rptr. 653], the Court of Appeal reviewed the propriety of conditioning a physician's recertification upon his submission to a psychiatric examination for determination of his capacity to resume practice. The doctor argued the order was in error because he was not charged in the accusation with being mentally ill. But the court upheld the order. "[T]he record amply supports the trial court's findings that Dr. Shea on numerous occasions engaged in unprofessional conduct in that, upon believing a patient to be hypnotized he described to that patient, in the coarsest detail, both sexual foreplay and the mechanics of sexual congress without having been solicited to do so nor having first explained his plan; and further, that such course of treatment was not appropriate to any such patient's medical complaint. Having read the testimony of Dr. Shea and of his patients, the board could reasonably question the doctor's mental competence to practice medicine. [Citations.]" (*Id.,* at p. 580.)

In *Windham* v. *Board of Medical Quality Assurance* (1980) 104 Cal.App.3d 461 [163 Cal.Rptr. 566], the court considered the discipline imposed on a doctor who had been convicted of income tax evasion. The doctor specifically attacked the provision requiring donation of his professional services free of charge to a community health institution for at least 20 hours a month for two years.

But the court upheld the provision finding the purpose of the discipline was to make him a better physician. The court explained "[c]harity has always been one of the attributes of a good doctor. . . . Clearly, the charitable work respondent is to do as a condition of probation is right in line with the purpose of the proceedings below." (*Id.,* at pp. 473-474.)

Unlike the courts in *Shea* and *Windham,* I cannot find any reasonable relationship between the discipline imposed and the charged offense.[1]

---

[1]Nor am I impressed with the board's arguments. It concedes "there were no specific findings that Dr. Bryce personally incompetently treated any patient . . . ." But the board argues "his general lack of regard for the welfare of the clinic's patients as demonstrated by his disregard of medical convention creates a doubt as to Dr. Bryce's knowledge and abilities to properly minister to his present patients." This may be true, but what will a test

Bryce was not accused of being incompetent. His crime was mismanagement at the least, or unethical conduct at the worst. Passing an oral clinical family practice examination will not in any way demonstrate he has become a better manager or is more ethical.

I would therefore find the trial court abused its discretion. The discipline imposed is not too harsh, but is arbitrary and capricious.

---

based on his medical skills accomplish?

The board further argues "it is not an abuse of its discretion to require any physician who has been significantly disciplined *no matter what the violation*, to pass an examination as a condition of probation." (Italics added.) In support of that contention it cites *People* v. *McDowell* (1976) 59 Cal.App.3d 807 [130 Cal.Rptr. 839]. But *McDowell* does not help the Board. The court reiterated the rule in criminal cases that in the granting of probation the courts have very broad discretion to impose conditions. However, a condition of probation is invalid if it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." (*Id.*, at p. 813.) This condition is invalid.