Filed 10/6/20; Certified for publication 11/3/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MOHAMMADREZA YAZDI, | B298130 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS172030 |
| v. | |
| DENTAL BOARD OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Neufeld Marks and Paul S. Marks for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Carl W. Sonne, Assistant Attorney General, David E. Brice and Morgan Malek, Deputy Attorneys General, for Defendant and Respondent.

————————————

Appellant Mohammadreza Yazdi, an orthodontist, appeals from a judgment of the trial court denying his petition for writ of administrative mandate under Code of Civil Procedure section 1094.5.  The trial court denied the writ and affirmed a November 6, 2017 decision of the Dental Board of California, following a 10-day evidentiary hearing, revoking Yazdi's dental license but staying the revocation and placing him on probation for five years.  We have jurisdiction pursuant to Code of Civil Procedure section 904.1, subdivision (a).  Finding that the trial court's decision was supported by substantial evidence and proper exercise of discretion, we affirm.

## BACKGROUND

Yazdi was first licensed in California as a dentist in October 1987.  After further special training, he began private practice in orthodontics in 1994.

Between June and early November 2009, in response to patient complaints, the Dental Board directed Yazdi to produce the complete dental records of 12 patients.  Yazdi failed to produce those records.  The Dental Board then served on Yazdi 12 subpoenas for those records on November 12, 2009.  Yazdi failed to comply with the subpoenas.  Based on the failure to produce complete records, the Dental Board then issued 12 citations, one on February 24, 2010, and the other 11 on April 14, 2010.  Eleven of the citations imposed a $250 per day fine, for each day the records were not produced, up to a maximum of $5,000.  The February 24, 2010 citation imposed a $550 fine.  Each citation required that the fine be paid within 30 days of issuance, and that the citation be abated by production of the requested records within 30 days.

2

Yazdi did not appeal the citations. He did not request an extension of time. He did not pay the fines. All 12 citations became final and non-appealable as of May 15, 2010. Nonetheless, Yazdi maintained communication with the Dental Board and mailed some of the requested records to the Dental Board. However, the Dental Board never received the complete dental records of any of the 12 patients it had requested of Yazdi.

The Dental Board filed its original accusation against Yazdi concerning the above events on October 21, 2010. A first amended accusation was filed on November 8, 2011. A hearing on these charges before a state administrative law judge was held in Los Angeles on March 5, 6, and 7, 2012. Finding that Yazdi had failed to pay the fines assessed by the Dental Board citations, and failed to produce the complete dental records in abatement of those citations, on May 4, 2012 the administrative law judge issued a decision recommending that Yazdi's dental license be revoked, but that the revocation be stayed pending probation for a period of three years. The Dental Board adopted the administrative law judge's decision on June 11, 2012, with an effective date of July 11, 2012.

While the above matter was pending, the Dental Board received four additional patient complaints against Yazdi that are the subject of the instant appeal. All four patients were minor children, and the complaints were made by one or both parents. On May 13, 2009, Connor O.'s parents registered a complaint seeking investigation of Yazdi's dental license, a refund of "appropriate portions of monies paid up front," and the release of the patient's medical records. On July 25, 2009, the parents of Stephanie M. and her brother Christopher M. registered complaints alleging Yazdi's failure to produce copies of

3

their service contracts and medical records, excessive charging of fees, and dissatisfaction with the results of Yazdi's orthodontic services.  On February 4, 2010, the parents of Irina S. registered a complaint alleging that Yazdi refused to remove Irina's braces until a fee balance was paid, and that he charged excessive fees.

The Dental Board assigned these complaints to an investigator who examined available medical records, interviewed the parents of each child patient, and sought the opinion of Dental Board expert Allan Sheridan, D.D.S.  Dr. Sheridan issued reports in each case, concluding that respondent committed acts of gross negligence, repeated acts of negligence, unprofessional conduct, fraud, and incompetence.  These conclusions led to the filing of the Dental Board's third amended accusation against Yazdi on March 24, 2017.

Administrate Law Judge Matthew Goldsby, with the state Office of Administrative Hearings, heard this matter in Los Angeles, California on June 19 to 22, 2017, June 26 to 30, 2017, and July 21, 2017, for a total of 10 hearing days.  Eighteen witnesses testified.  The record was held open until August 28, 2017, to allow both sides to file concurrent closing briefs, which both sides did.  The matter was taken under submission on August 28, 2017.  The administrative record is comprised of nearly 3,700 pages, including numerous exhibits and nearly 2,700 pages of hearing transcripts.  Both the Dental Board's expert, Dr. Sheridan, and Yazdi's expert, Jeffrey Cohen, D.M.D., testified concerning the relevant standards of care applicable to the disciplinary charges.

The administrative law judge's decision, dated September 26, 2017, found that the Dental Board had *not* proved the accusations of gross negligence (1st, 6th, 11th, and 18th

4

causes for discipline), incompetence (5th, 10th, and 15th causes for discipline), and two of the accusations of excessive treatment (7th and 14th causes for discipline). The decision found that the Dental Board *had* proved by clear and convincing evidence the accusations of repeated acts of negligence (2d cause for discipline), obtaining fees by fraud or misrepresentation (3d, 8th, 12th, 14th, and 17th causes for discipline), failure to comply with record requests and excessive charges for records (4th, 9th, and 13th causes for discipline), excessive treatment (16th cause for discipline), and unprofessional conduct by refusing to remove a patient's braces until an outstanding fee was paid (19th cause for discipline). After reviewing the factors enumerated in the Dental Board's published guidelines, the administrative law judge recommended discipline for Yazdi consisting of revocation of his dental license, stayed and placed him on probation on specified terms for a period of five years, with Yazdi's license to be fully restored upon successful completion of probation. The decision also required Yazdi to reimburse $51,081.03 in costs incurred for investigation and prosecution of the charges.

The Dental Board adopted the administrative law judge's decision and recommendation by order dated November 6, 2017.

On January 5, 2018, Yazdi filed in superior court a petition for writ of mandate challenging this decision under Code of Civil Procedure sections 1085 and 1094.5. The Dental Board answered the petition on February 1, 2018. Yazdi filed his opening brief in support of the petition on December 24, 2018. The Dental Board

5

filed its opposition memorandum on February 26, 2019. Yazdi filed his reply brief in support of the petition on March 4, 2019.[1]

The trial court held a hearing as scheduled on March 19, 2019. Oral argument consumed roughly 90 minutes, after which the trial court took the matter under submission. Later that day, the trial court issued a 12-page written decision affirming the majority of the findings of the Dental Board and affirming the discipline imposed by the Dental Board. Judgment denying the petition for writ of mandate was entered on April 2, 2019.

Yazdi filed his notice of appeal on May 31, 2019. The record on appeal includes an opening brief from Yazdi, a respondent's brief from the Dental Board, appendices submitted by both Yazdi and the Dental Board, and the administrative record from the Dental Board proceedings (the same record considered by the trial court). No reply brief was filed by Yazdi.

## DISCUSSION

### A. Standard of Review

As revealed by its written decision, the trial court applied the "independent judgment" standard of review to the Dental Board's decision ordering stayed, probational revocation of Yazdi's license to practice. (Code Civ. Proc., § 1094.5; see *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) This accorded with a long line of California precedent.

---

[1] Neither the petition and answer nor any of the briefs filed in the trial court have been made part of the record on this appeal. The above information is derived from the trial court civil register.

" ' "Under the independent judgment rule, the trial court must weigh the evidence and make its own determination as to whether the administrative findings should be sustained. When an appeal is taken from the trial court's determination, it is given the same effect as any other judgment after trial rendered by the court: the only question is whether the *trial court's* (not the administrative agency's) findings are supported by substantial evidence. [Citation.] Conflicts in the evidence must be resolved in favor of the judgment and where two or more inferences can be reasonably drawn from the facts, the reviewing court must accept the inferences deduced by the trial court." [Citation.] However, ". . . the trial court's legal conclusions are open to our examination to determine if errors of law were committed." [Citation.] [¶] "Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value." [Citation.] Additionally, a reviewing court "may look to the findings in [the administrative agency's] decision for guidance in determining whether the trial court's judgment is supported by substantial evidence." [Citation.]' (*Lam v. Bureau of Security & Investigative Services* [(1995)] 34 Cal.App.4th [29,] 35-36.)" (*Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 796.)

"On appeal from a decision of a trial court applying its independent judgment, we review the trial court's findings rather than those of the administrative agency. [Citation.] Specifically, we review the trial court's factual findings for substantial evidence. In doing so, we must resolve all conflicts in favor of [the respondent], the party prevailing below. Further, we cannot reweigh the evidence. Thus, we do not determine whether substantial evidence would have supported a contrary judgment,

but only whether substantial evidence supports the judgment actually made by the trial court. [Citations.] In sum, '[t]he question on appeal is whether the evidence reveals substantial support—contradicted or uncontradicted—for the trial court's conclusion that the weight of the evidence supports the [agency's] findings of fact. [Citation.] We uphold the trial court's findings unless they so lack evidentiary support that they are unreasonable.' [Citation.]" (*Norasingh v. Lightbourne* (2014) 229 Cal.App.4th 740, 753.)

At oral argument, counsel for Yazdi asserted for the first time that a different standard of review should have applied in the trial court, based on the California Supreme Court decision in *Conservatorship of O.B.* (2020) 9 Cal.5th 989 (*O.B.*), which had been handed down two months before. We gave leave to the parties to submit further briefing on this question.

After reviewing this decision in light of the further briefing submitted by the parties, we have concluded that the *O.B.* decision is not apposite to the administrative mandate setting we address here. *O.B.* addressed the situation where the trial court was the original finder of fact in a contested proceeding, and the "clear and convincing" standard of proof applied to particular findings made by the trial court. *O.B.* held that "an appellate court evaluating the sufficiency of the evidence in support of a finding must make an appropriate adjustment to its analysis when the clear and convincing standard of proof applied before the trial court. In general, when presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of

8

high probability demanded by this standard of proof." (*O.B.*, *supra,* 9 Cal.5th at p. 1005.) The court further emphasized, "an appellate court reviewing a finding made pursuant to the clear and convincing standard *does not reweigh the evidence itself*. In assessing how the evidence reasonably could have been evaluated by the trier of fact, an appellate court reviewing such a finding is to view the record in the light most favorable to the judgment below; it must indulge reasonable inferences that the trier of fact might have drawn from the evidence; it must accept the factfinder's resolution of conflicting evidence; and it may not insert its own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment." (*Id.* at p. 1008, italics added.)

Contrary to Yazdi's assertion, we do not read the *O.B.* decision as overturning the standard to be applied by the trial court in reviewing an administrative proceeding pursuant to a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5. The *O.B.* case involved an appeal from a probate proceeding, not an administrative mandate proceeding. The *O.B.* decision made no mention of the decades of case law (including the cases cited earlier) concerning the review to be made initially in the trial court and subsequently by this court in the administrative mandate setting. Perhaps most significantly, the established standards for trial court review of an administrative proceeding involving a "fundamental vested right" explicitly call for the trial court to *reweigh the evidence in its independent judgment*. (E.g., *Green v. Board of Dental Examiners*, *supra*, 47 Cal.App.4th at p. 796.) This runs contrary to the language in the *O.B.* decision that we emphasized above, stating that the trial court should *not* reweigh the evidence. In

9

sum, we are not persuaded that the *O.B.* decision intended to abolish the independent judgment standard in administrative mandate proceedings, and decline to do so here.

As for the discipline selected by the Dental Board and affirmed by the trial court, "[i]n a mandamus proceeding brought to review an administrative order, the determination of penalty by the administrative body will not be disturbed absent a showing of an abuse of discretion. (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217 . . . ; *Magit v. Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 . . . .) The discretion exercised by the administrative body must be an impartial one taking into account all relevant facts, together with legal principles essential to an informed and just decision. (*Skelly v. State Personnel Bd.*, *supra*, . . . at pp. 217-218 . . . ; *Catricala v. State Personnel Bd.* (1974) 43 Cal.App.3d 642, 646 . . . .) However, even were the penalty to appear harsh to us, still we would not be free to substitute our discretion for that of the administrative body. (Code Civ. Proc., § 1094.5, subd. (e); *Cooper v. Board of Medical Examiners* [(1975)] 49 Cal.App.3d [931,] 950 . . . .) The fact that reasonable minds might differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within its discretion. (*Ibid.*; see also *Lake v. Civil Service Commission* (1975) 47 Cal.App.3d 224, 288 . . . .)" (*Shea v. Board of Medical Examiners* (1978) 81 Cal.App.3d 564, 579.) And, contrary to Yazdi's assertion, the severity of the discipline which may be imposed does not depend on whether patients have been medically injured by the challenged practices. (*Bryce v. Board of Medical Quality Assurance* (1986) 184 Cal.App.3d 1471, 1475.)

Yazdi has not followed the above principles in pursuing this appeal. Yazdi writes in his brief, "We prove below . . . that the

10

grounds for discipline found by the [h]earing [o]fficer did not meet the 'clear and convincing' standard of evidence." This misses the point; we are no longer concerned with the quality of evidence at the administrative hearing. We are addressing whether the *trial court's* decision reviewing the administrative hearing, based on the trial court's own independent judgment, was supported by substantial evidence.

## B. Statutory Framework

The disciplinary proceedings against Yazdi proceeded against the backdrop of three principal statutes.

Business and Professions Code section 1670 provides, in pertinent part: "Any licentiate may have his license revoked or suspended or be reprimanded or be placed on probation by the board for unprofessional conduct, or incompetence, or gross negligence, or repeated acts of negligence in his or her profession . . . ."

Business and Professions Code section 1680 provides, in pertinent part: "Unprofessional conduct by a person licensed under this chapter is defined as, but is not limited to, any one of the following: [¶] (a) The obtaining of any fee by fraud or misrepresentation. [¶] . . . [¶] (n) The violation of any of the provisions of this division."

Business and Professions Code section 1685 provides: "In addition to other acts constituting unprofessional conduct under this chapter, it is unprofessional conduct for a person licensed under this chapter to require, either directly or through an office policy, or knowingly permit the delivery of dental care that discourages necessary treatment or permits clearly excessive treatment, incompetent treatment, grossly negligent treatment,

11

repeated negligent acts, or unnecessary treatment, as determined by the standard of practice in the community."

Significantly, "[Business and Professions Code s]ection 1680's statement that unprofessional conduct 'is not limited to' its list of examples means unlisted conduct may be 'unprofessional conduct' subject to discipline. (*People v. Arias* (2008) 45 Cal.4th 169, 182 . . . [it is a 'general rule of statutory construction that "[u]se of the language 'including, but not limited to' in the statutory definition is a phrase of enlargement rather than limitation" ']; *People v. Williams* (2010) 184 Cal.App.4th 142, 147 . . . [the phrase 'strongly indicates that the categories listed in the statute were not intended to be exclusive']; *Sanchez v. State of California* (2009) 179 Cal.App.4th 467, 484 . . . [the phrase means a list is not exclusive].) Moreover, the Legislature's selection of the 'not limited to' phrase was no accident. The Legislature inserted the phrase by amendment in 1979, purposefully expanding the statute's reach. (Stats. 1979, ch. 653, § 7, p. 2011; *id.*, ch. 1007, § 5.5, p. 3426 [substituting 'by a person licensed under this chapter is defined as, but is not limited to, the violation of' for 'is defined to be' in the introductory clause of [Bus. & Prof. Code,] § 1680].)" (*Gillis v. Dental Bd. of California* (2012) 206 Cal.App.4th 311, 320, disapproved on other grounds in *Dhillon v. John Muir Health* (2017) 2 Cal.5th 1109, 1116, fn. 2; see *Shea v. Board of Medical Examiners*, *supra*, 81 Cal.App.3d at p. 575 [in medical doctor context, interpreting phrase " 'but is not limited to' " to allow discipline for unlisted conduct "which indicates an unfitness to practice medicine," and concluding there is no unfairness to discipline respondents in so doing].)

## C. Yazdi's Contentions on Appeal

In reviewing the trial court's decision, we start with the presumption the judgment is correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) An appellant has the burden to demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

California Rules of Court, rule 8.204(a)(1)(B) provides that "[e]ach brief must: [¶] . . . [¶] [s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority . . . ." This is important because this court is "not required to make an independent, unassisted study of the record in search of error or grounds to challenge a trial court's action. We are entitled to the assistance of counsel." (*Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 948.) Yazdi has not complied with these requirements here.

In a section of his opening brief entitled "Introduction," Yazdi sets out the following grounds of challenge to the trial court decision denying his petition for writ of administrative mandate:

"1. The record on appeal lacks substantial evidence demonstrating that [Yazdi] breached the standard of care in his treatment of any of the four patients under review.

"2. There was no substantial evidence showing that any of the four patients was harmed. Indeed, the evidence demonstrated to the contrary, that no patient was harmed.

"3. The evidence demonstrated that none of the four patients required any corrective orthodontics after leaving [Yazdi's] practice; this again demonstrates a lack of substantial evidence of patient harm.

13

"4.  The purported billing irregularities alleged in the operative [t]hird [a]mended [a]ccusation were not supported by substantial evidence.

"5.  [Dental Board] failed to prove, with substantial evidence, any violation of the California Dental Practice Act."

However, the argument section of Yazdi's brief does not follow this outline.  Instead, the argument section consists of an unbroken, discursive commentary on topics from the Dental Board hearing and decision with no subheadings, only one citation to authority in 13 pages, and only occasional citations to the administrative record.  There are no citations to the trial court's written decision denying Yazdi's petition, despite the fact that this appeal is from that trial court decision.  There is virtually no specific discussion providing reasoning as to why *this* court, applying the standard of review applicable to *this* court, should reverse the trial court's decision.  Nonetheless, we endeavor below to discern the contentions he seeks to make before this court.

    1.    *Study Models*[2]

Yazdi opens the "Argument" section of his brief with the following inaccurate statement:  "The Administrative Law Judge found, and the Superior Court upheld the finding, that [Yazdi] was subject to discipline for 'gross negligence,' because he failed to take 'study models' . . . ."  On the contrary, the Dental Board's decision states as follows:  "Cause does *not* exist to discipline

---

[2] An orthodontic study model is a three-dimensional model of a patient's teeth and gums, taken at the beginning of treatment, to mimic the patient's mouth at the time before treatment begins.

14

respondent's license under Business and Professions Code sections 1670, [1680, subdivision (n), and 1685] on the grounds of gross negligence because complainant did not establish by clear and convincing evidence that the departure from the standard of care was sufficiently extreme." (Italics added.) Apparently Yazdi previously made the same inaccurate contention to the trial court, which stated in its ruling, "Contrary to [Yazdi's] assertion . . . , the [Dental] Board did not find [Yazdi's] failure to take study models was 'gross negligence,' rather it found the failure constituted negligence."

Addressing this issue, the trial court noted: "The [Dental] Board found that the standard of care for orthodontists involves taking study models." The trial court continued its analysis as follows:

"Several orthodontists testified as to this issue. Three ([Dr.] Sheridan, [Peter M.] Roth[, D.D.S.], and [John R.] Dandona[, D.M.D.]) stated that models are required; Yazdi, [Dr.] Cohen, and Richard Gutierrez[, D.D.S.] stated that they are not. The [administrative law judge] notes that 'a survey taken by the American Association of Orthodontists revealed that one-third of all orthodontists do not take study models in the regular course of practice.' . . . The [administrative law judge] articulated several reasons why he gave more weight to [Dr.] Sheridan's opinion than [Dr.] Cohen's. . . . Like the [administrative law judge], the court is persuaded to follow [Dr.] Sheridan. . . . [¶] In his brief, [Yazdi] cites to [the administrative record] for the evidence that "about 33[ percent] of all orthodontist[s] choose not to take study models." . . . The cited pages of the record do not support that proposition. The evidence cited is the testimony of [Yazdi's] expert in which he refers to 'the most recent survey' of the

15

American Association of Orthodontists showing that 'most don't take study models.' . . . The [administrative law judge] sustained an objection to the survey being received in evidence. . . . [¶] [Yazdi] also argues that . . . 'a large percentage of the remainder of survey respondents took study models for only "legal reasons," ['] and that 'Dr. Sheridan did not disagree with the accuracy of the [American Association of Orthodontists] survey results.' . . . [Yazdi] points to the same pages in the record . . . to support these contentions. Again, the cited pages do not contain this evidence. [¶] [Yazdi] also argues that the textbooks relied upon by Dr. Sheridan do not support the conclusion that orthodontists are required to use study models. To support this assertion, [Yazdi] cites to [the administrative record]. This citation is to the opening statement made by [Yazdi's] counsel in which he purported to read from a textbook. The opening statement and arguments of counsel are not evidence. [¶] As noted by the [administrative law judge], Yazdi does not dispute that he did not use study models for these patients. . . . [¶] Based on the testimony of the [Dental] Board's orthodontist witnesses, and the lack of specific persuasive evidence from [Yazdi's] expert, the weight of the evidence supports the finding that failing to take study models falls below the standard of care. Accordingly, the [Dental] Board's findings that Yazdi engaged in negligent acts flows directly from its finding as to the standard of care."

Although Yazdi's opening brief urges that "the issue of 'study models' permeates this entire case, and is perhaps the most salient cause for the implementation of discipline," Yazdi's argument before this court does not address the *trial court's* analysis and conclusions. Instead, Yazdi appears simply to have

16

repeated the exact same assertions, citing to the exact same portions of the record, that were rejected by the trial court as set out above. As noted earlier in the discussion of standard of review, it is not our task (nor our prerogative) to reweigh the evidence in the manner Yazdi seeks.

We also do not share Yazdi's assessment that "the issue of 'study models' permeates [the] entire case." The Dental Board found (and the trial court upheld) only a single charge of "repeated acts of negligence" relating to Yazdi's failure to take study models at the beginning of treatment. The remainder of the charges upheld—obtaining fees by fraud or misrepresentation, failure to comply with record requests and excessive charges for records, excessive treatment, and refusing to remove a patient's braces until an outstanding fee was paid— have no obvious connection to whether study models were taken.

From our unaided review of the administrative record, we note that the Dental Board's orthodontic expert, Dr. Sheridan, testified for an entire hearing day, June 22, 2017, and for parts of three additional days, on June 26, 2017, June 27, 2017, and July 21, 2017. Dr. Sheridan's initial testimony describing study models and their importance in orthodontic practice covers more than 20 pages of transcript. Dr. Dandona, an orthodontist who subsequently treated patient Connor O., testified that he considered study models to be "essential" to orthodontic practice.

Both the administrative law judge and the trial court noted that there was conflicting evidence on the subject of study models, but concluded that the evidence that failure to take study models constituted negligence was more persuasive.

Before this court, Yazdi has cited to portions of the testimony of his retained expert, Dr. Cohen, and others (including

Yazdi himself) as to why the taking of study models was not required if other diagnostic tools were properly used. Yazdi also emphasizes the administrative law judge's finding that "[n]o evidence was presented to show that [Yazdi] failed to make a correct diagnosis of any of the four patients." Yazdi argues that because the administrative law judge "did not point to any patient harm directly caused by the absence of 'study models' " this "was, at worst, a 'no harm, no foul' situation."

This argument is unavailing at this stage. First, case law makes clear that actual patient harm is not required as a condition to the imposition of discipline on a licensed professional. "If accepted, this argument would have a serious implication for license discipline proceedings. In essence, it would prohibit the imposition of discipline on a licensee until harm to patients had already occurred. We reject this argument because it overlooks the preventative functions of license discipline, whose main purpose is protection of the public (*Bryce v. Board of Medical Quality Assurance, supra*, 184 Cal.App.3d at p. 1476), but whose purposes also include prevention of future harm (*In re Kelley* (1990) 52 Cal.3d 487, 496 . . .) . . . ." (*Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 772, fn. omitted.)

Second, our review of the trial court's decision is limited to assessing whether the decision was supported by substantial evidence. " ' "When an appeal is taken from the trial court's determination, it is given the same effect as any other judgment after trial rendered by the court: the only question is whether the *trial court's* (not the administrative agency's) findings are supported by substantial evidence. [Citation.] Conflicts in the evidence must be resolved in favor of the judgment and where two or more inferences can be reasonably drawn from the facts,

18

the reviewing court must accept the inferences deduced by the trial court." [Citation.]' " (*Green v. Board of Dental Examiners*, *supra*, 47 Cal.App.4th at p. 796.)  The trial court ruling here was supported by substantial evidence, and the finding concerning the failure to use study models must be affirmed.

2.     *Informed Consent*

The administrative law judge made findings that the failure of Yazdi to obtain informed *written* consent prior to treatment of the four young patients fell below the standard of care.  This finding is not expressly referenced in the "Legal Conclusions" section of the Dental Board decision, but appears to fall under the general rubric of unprofessional conduct on which Dental Board's discipline order was based.  In any event, Yazdi apparently challenged this finding before the trial court, as the trial court discussed it in its written decision.

Specifically, the court stated:  "The [Dental] Board found that the standard of care required the practice of obtaining written informed consent. . . .  [¶]  The weight of the evidence supports this finding.  Dr. Sheridan testified that written informed consent is required by the standard of care. . . .  Though he testified that written consent is not required by the standard of care, Yazdi's expert, Dr. Cohen, admitted that he uses written consent forms in his own practice. . . .  Given this discrepancy between Dr. Cohen's expert opinion and his own practice, the [administrative law judge] was justified in crediting Dr. Sheridan's opinion on this issue.  [¶]  In its decision, the [Dental] Board found that Yazdi failed to meet this standard by not obtaining written consent from the patients. . . .  But, in opposition, the [Dental] Board admits that there is a consent form in Connor's file. . . .  Accordingly, the [Dental] Board's

19

finding that Yazdi violated the standard of care by not obtaining written informed consent from Connor is not supported by the weight of the evidence. [¶] Yazdi has not pointed the court to the existence of written informed consent for any of the other patients. . . . Accordingly, the court concludes that the weight of the evidence supports the [Dental] Board's conclusions that Yazdi failed to meet the standard of care by failing to obtain written informed consent from Stephanie, Christopher, and Irina."

In his opening brief, Yazdi argues, in substance, that neither the Dental Board nor the trial court should have given weight to Dr. Sheridan's opinion that the standard of care required informed *written* consent, and that in any event there was no evidence that Yazdi had done anything to any child that the parents or the children did not want him to do. Yazdi states that "as to all four patients, the evidence showed that they were each well-informed by Dr. Yazdi." However, Yazdi does not cite to anything in the record in support of this claim.

We conclude that the trial court's decision on this issue was supported by substantial evidence, and must be affirmed.

3. *Issues with Professional Fees*

The charges against Yazdi in this category arose because the parents complained of being billed unexpected (and unconsented-to) charges by Yazdi. In the case of Connor O., Yazdi refused to refund advance payments for work not performed when the parents chose to move to a different orthodontist, basing his refusal on a financial agreement that the parents had neither seen nor signed. In the case of Stephanie and Christopher M., Yazdi began to charge monthly fees that the parents did not believe they had ever agreed to, and again no such signed agreement could be found in the records.

20

The trial court addressed these issues as follows:

"The [Dental] Board found that Yazdi breached the standard of care by charging Connor for work that was not performed. . . . Yazdi argues that this finding constitutes a reversible error because the [t]hird [a]mended [a]ccusation does not include such a charge. . . . The court does not agree. While the third cause for discipline charges [Yazdi] with obtaining a fee by misrepresentation, the second cause for discipline charges that '[Yazdi] failed to present and obtain agreement for financial arrangements prior to starting treatment. The standard of care is to charge a person for actual work done but instead [Yazdi] charged Connor O.'s parents based on a document that claimed they had to forfeit advance fees paid if they stopped treatment and which the parents were not presented and did not sign.' Thus [Yazdi] was put on notice of the [Dental] Board's claim of charging Connor for work not performed.

"Fees Obtained by Misrepresentation [¶] The Board's decision states the following: [¶] 16. The third, eighth, twelfth, and seventeenth causes of discipline alleged unprofessional conduct by obtaining fees by misrepresentation or fraud. [¶] 17. Complainant establishes by clear and convincing evidence that the parents of Connor O., Stephanie M., and Christopher M. never signed a financial agreement for [Yazdi's] services. Irina S. did not sign a financial agreement for Phase I treatment. By enforcing contractual terms that [Yazdi] withheld from his patients, [Yazdi] obtained fees by misrepresentation, even if collected only from insurance carriers. [¶] 18. In the case of Connor O., [Yazdi] was paid in advance for services anticipated to span 12 to 18 months. When those services were terminated in six months, [Yazdi] refused and has yet to return the unearned

21

portion of those fees, notwithstanding a court judgment against him.  [¶]  19. Accordingly, cause exists to discipline [Yazdi's] license under Business and Professions Code sections 1670 and 1680, subdivision (a), because [Yazdi] engaged in unprofessional conduct by obtaining fees by misrepresentation or fraud. . . .

"Business and Professions Code section 1680[, subdivision ](a) states that 'the obtaining of any fee by fraud or misrepresentation' constitutes unprofessional conduct.  [Yazdi] argues that to sustain this charge, the [Dental] Board must present evidence of a knowingly false representation made to defendant with the intent to deceive or induce reliance, coupled with reasonable reliance and damages.  While this is certainly one formulation of fraud, fraud can also be shown by concealment or nondisclosure of material facts, especially when there is a fiduciary relationship between the parties.  [¶]  The elements of fraud by concealment are '(l) That the parties were in a fiduciary relationship and defendant intentionally failed to disclose certain facts to plaintiff; 2) that plaintiff did not know of the concealed facts; 3) that defendant intended to deceive; 4) that had the omitted information been disclosed, [p]laintiff reasonably would have behaved differently; 5) that plaintiff was harmed; and 6) that defendant's concealment was a substantial factor in causing plaintiff's harm.  (CACI [No.] 1901; see also, e.g., *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.)  The wording of the third, eighth, twelfth, fourteenth, and seventeenth causes of action make it clear that the [Dental] Board's theory was failure to disclose and obtain consent to fees prior to the rendering of services, or withholding copies of the contracts.  [¶]  The weight of the evidence presented supports a conclusion that Connor's parents were not provided with a

22

financial agreement they saw, signed, or agreed to prior to treatment that informed them, among other things, that [Yazdi] would keep 50[ percent] of an unearned fee in the event of cancellation. . . .  Similarly, the weight of the evidence supports a conclusion that [Yazdi] did not provide the parents of Stephanie [and] Christopher with a contract to agree to and sign that informed them of additional charges after two years of treatment. . . .

"As to Irina, [the Dental Board] argues there was concealment as to the charges for Phase I treatment.  [The Dental Board] did not provide a record citation to support this conclusion in their brief, and could not do so when asked at the hearing.  [¶]  On the issue of reliance, the [Dental] Board correctly notes that in the fiduciary context reliance may be presumed. . . .  '[A] representation in the context of a trust or fiduciary relationship creates a rebuttable presumption of reasonable reliance subject to being overcome by substantial evidence to the contrary.' (*Edmunds v. Valley Circle Estates* (1993) 16 Cal.App.4th 1290[, 1302].)  Put differently, in the doctor-patient context, where 'there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action.' (*Bowman v. McPheeters* (1947) 77 Cal.App.2d 795, 801.)  [¶]  The weight of the evidence supports a finding of obtaining fees by fraud as to Connor, Stephanie and Christopher."

On appeal, Yazdi fails to meaningfully address the points made by the trial court.  He again argues (as he apparently did before the trial court) that the third amended accusation did not give him sufficient notice concerning Yazdi's failure to refund

23

unearned fees paid in advance by the parents of Connor O.  We agree with the trial court's reasoning that fair notice of this claim was, in fact, contained in the third amended accusation.

His remaining arguments also lack merit.  He contends, for example, that no fee was obtained by him *after* Connor O.'s mother first saw the unsigned financial agreement that purported to allow Yazdi to keep 50 percent of the total estimated fee for the full 12 to 18 months of treatment if treatment was discontinued within the first six months.  This, of course, is beside the point, because Connor's mother had *already* paid fully in advance, and the issue was that she had not agreed to (nor been aware of) his claim that he was entitled to retain substantial unearned fees if treatment with him was stopped early.  He also argues that his billing practices should not matter because some or all of the fees were paid by insurance, rather than out-of-pocket by these complaining parents.  But the Dental Board's responsibilities clearly encompass fairness and honesty in insurance billing as much as amounts billed to parents of the patients.  The fact that an insurance carrier rather than a patient may have paid Yazdi's fees does not negate the charge that he obtained such fees by fraud or misrepresentation.

Particularly troubling is that even after these matters came to light, Yazdi has apparently continued to withhold the unearned fees claimed by the parents of Connor O., and has apparently failed to pay the small-claims judgment they obtained against him in regard to these fees.

Given that the relationship between Yazdi and his patients is recognized under California law to be a fiduciary relationship (*Bowman v. McPheeters*, *supra*, 77 Cal.App.2d at p. 800), which gives rise to a duty to make full and fair disclosure to patients of

24

all facts which materially affect their rights and interests, it is not unreasonable for the Dental Board to use its disciplinary process to foster transparency in the financial relationships between an orthodontist and his patients. The orthodontic treatment programs involved here ran into thousands of dollars.

The trial court's rulings concerning Connor O., and Stephanie and Christopher M. were supported by substantial evidence, and must be affirmed.

4. *Issues with Patient Record Requests*

A part of the basis of the original complaints made by the parents of Connor O. and Stephanie and Christopher M. was Yazdi's refusal to make patient records available on request, and his imposition of extremely high charges for making copies of the records. Yazdi's opening brief refers to these matters as "recordkeeping failures," but this term does not accurately describe the problem.

At the time of these events, Health and Safety Code former section 123110, subdivision (a)[3] stated in pertinent part that "any minor patient authorized by law to consent to medical treatment, and any patient representative shall be entitled to inspect patient records upon presenting to the health care provider a written request for those records and upon payment of reasonable clerical costs incurred in locating and making the records available." Former subdivision (b) also stated that "[a]dditionally, any patient or patient's representative shall be entitled to copies of all or any portion of the patient records that he or she has a right to

_____

[3] This statute was amended effective January 1, 2018 (Stats. 2017, ch. 513 (SB 241), § 2; Stats. 2017, ch. 626 (SB 575), § 1.5).

inspect, upon presenting a written request to the health care provider specifying the records to be copied, together with a fee to defray the cost of copying, that shall not exceed twenty-five cents ($0.25) per page or fifty cents ($0.50) per page for records that are copied from microfilm and any additional reasonable clerical costs incurred in making the records available." Former subdivision (i) stated in pertinent part that "[a]ny health care provider . . . who willfully violates this chapter is guilty of unprofessional conduct. . . . The state agency, board, or commission that issued the health care provider's professional or institutional license shall consider a violation as grounds for disciplinary action with respect to the licensure, including suspension or revocation of the license or certificate."

The administrative record contains evidence that Yazdi did not comply with requests by the parents of Connor O. and Stephanie and Christopher M. to inspect the records regarding their children, and that Yazdi imposed a charge of $250 for copies of Connor O.'s records and $150 per patient for copies of Stephanie and Christopher M.'s records. Indeed, Yazdi himself documented the $250 charge for Connor O.'s records, in a letter to a lawyer assisting Connor O.'s family. These charges are clearly excessive under Health and Safety Code section 123110, as the trial court found.

Substantial evidence supports the trial court's findings concerning the records requests here, and they must be affirmed.

5. *Issues with Treatment of Irina S.*

Based on the testimony of Dr. Sheridan (the Dental Board expert), the Dental Board found, and the trial court affirmed, a charge that Yazdi had excessively treated patient Irina S., for a longer period and for a significantly higher cost than should have

26

been required. On appeal, Yazdi makes a number of contrary factual assertions, but cites only to a portion of his own testimony, which does not substantiate those assertions. Substantial evidence supports the trial court's finding of excessive treatment.

The Dental Board also found, and the trial court also affirmed, a charge that at an appointment scheduled for removal of Irina S.'s braces, Yazdi refused to do the work until a claimed $800 balance was paid. The trial court pointed to evidence from testimony of Irina's mother, and a letter from Yazdi himself to the Dental Board that confirms this episode. On appeal, Yazdi seeks to recharacterize these events, but cites to no evidence in the record except for a letter from Irina's regular dentist, Edith Cuevas-Mendoza, D.M.D. that corroborates the Dental Board finding. Yazdi has failed to demonstrate any ground to disturb the trial court's finding on this charge, and we find that it is supported by substantial evidence.

6.    *Discipline Imposed*

The trial court found that the weight of the evidence supported the Dental Board's factual and legal findings, except for the charge of failure to obtain informed consent as to Connor O., and obtaining fees by fraud or misrepresentation as to Irina S. The trial court further found that, in light of the other charges supported by the weight of the evidence, there was no reasonable possibility that the Dental Board would have imposed different discipline in the absence of those two findings.

We agree. The Dental Board's published disciplinary guidelines (August 30, 2010) set forth the maximum and minimum recommended penalties for violations of the statutes involved here. For Business and Professions Code section 1670

27

(gross negligence, incompetence, repeated acts of negligence), the maximum penalty is revocation; the minimum penalty is revocation, stayed, with two years of probation.  For Business and Professions Code section 1680, subdivision (a) (obtaining any fee by fraud or misrepresentation), the maximum penalty is revocation; the minimum penalty is revocation, stayed, with five years of probation.  For Business and Professions Code section 1685 (permitting dental care that encourages excessive or improper treatment), the maximum penalty is revocation; the minimum penalty is revocation, stayed, with five years of probation.

In this case, most of the charges that were sustained fall under the provisions of the guidelines that call for a minimum of five years of probation as part of a stayed revocation.  That minimum penalty is what the Dental Board imposed and the trial court affirmed.

" 'The propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency, and its decision may not be disturbed unless there has been a manifest abuse of discretion.  [Citations.]' " (*Williamson v. Board of Medical Quality Assurance* (1990) 217 Cal.App.3d 1343, 1347, quoting *Lake v. Civil Service Commission* (1975) 47 Cal.App.3d 224, 228.)  " '[N]either a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh.' " (*Cadilla v. Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966.)

On appeal, Yazdi has devoted no part of his opening brief to a discussion of the discipline imposed by the Dental Board, other than to lament "the aggressive, inquisitorial nature of the [Dental] Board's case against [Yazdi]" and "the vendetta-like nature of the [Dental] Board's conduct here." He argues, "Dr. Yazdi is now nearing his tenth year of probation for allegations and findings that the [administrative law judge] found (1) involved no misdiagnosis[,] (2) harmed no patients, and (3) at most involved a few thousand dollars in disputed billings, which have never been proven to have been obtained by misrepresentation or fraud."

The probation at issue in *this* case was imposed as of December 6, 2017. It was based on findings made by the Dental Board in 2017, and affirmed by the trial court on independent review of the weight of the evidence in 2019. We here conclude that the trial court's findings are based on substantial evidence. The Dental Board acted within its discretion to impose the discipline that it imposed, and we will not disturb the agency's decision unless "there is an arbitrary, capricious or patently abusive exercise of discretion" by the agency. (*Brown v. Gordon* (1966) 240 Cal.App.2d 659, 667.) We find no such abuse of discretion here, particularly where in each case the discipline imposed reflects the *minimum* established by the Dental Board guidelines.

## DISPOSITION

The judgment of the trial court is affirmed.  Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED


SINANIAN, J.*


We concur:



ROTHSCHILD, P. J.



CHANEY, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/3/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MOHAMMADREZA YAZDI, | B298130 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS172030) |
| v. | |
| DENTAL BOARD OF CALIFORNIA, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

　　　　The opinion in the above-entitled matter filed on October 6, 2020, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


_____　　_____　　_____

ROTHSCHILD, P. J.　　　　CHANEY, J.　　　　SINANIAN, J.*

---

　　　* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.